506 A.2d 1191

**Douglas Lindsay MIDDLETON, Jr.**

v.

**STATE of Maryland.**

**No. 876, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

April 7, 1986.

Gary S. Offutt, Asst. Public Defender (Alan H. Murrell, Public Defender, on brief), Baltimore, for appellant.

Jillyn K. Schulze, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Baltimore, Sandra A. O'Connor, State's Atty. for Baltimore County and David Moore, Asst. State's Attorney for Baltimore County, Towson, on brief), for appellee.

Argued before BISHOP, ALPERT and ROBERT M. BELL, JJ.

ROBERT M. BELL, Judge.

Douglas Lindsay Middleton, Jr., appellant, was convicted by a jury in the Circuit Court for Baltimore County of attempted daytime housebreaking and malicious destruction of property.[1] The State elected to proceed against appellant as a subsequent offender pursuant to Md.Code Ann. art. 27, 643B(c); consequently, following a sentencing hearing at which the proof required by the statute was presented, appellant was sentenced to twenty-five years imprisonment without benefit of parole. Appellant attacks the judgment thus entered on six grounds, contending:

---

1. Appellant was also charged with attempted breaking and entering, which the State nolle prossed prior to trial.

1. Insufficient evidence was presented to sustain appellant's conviction;

2. Article 27 § 643B is unconstitutional;

3. His sentence is unconstitutional;

4. The trial court applied the wrong burden of proof in determining that appellant qualified as a subsequent offender;

5. The prosecution exercised sentencing discretion on an improper basis;

6. He could not be tried for the offenses of which he was convicted because the prosecution nolle prossed in the District Court a charge of housebreaking and entering arising from the same offense.

We will consider each contention in the order presented and, as each issue is discussed, set forth such facts as are necessary for its resolution.

## I.

The State's case consisted of the testimony of the victim, the victim's neighbor, and a police officer. Their testimony tended to prove the following: On the morning of the offense, the victim left her home secure, having locked all exterior doors, including the subject screen door, and having given no one permission to enter. During that afternoon, the victim's neighbor observed two men, one of whom was identified later as appellant, enter the victim's backyard. He later saw one of the two men ascend the stairs to the victim's sun deck, peek into the window and then, approaching the glass sliding door, appear to "jimmy" that door. The two men walked away when the neighbor yelled, "Are you looking for someone?", whereupon, the neighbor called the police and reported the incident, giving a description of the men he had observed. Two Baltimore County police officers responded to the call and while cruising the area, observed appellant and another Black male fitting the description given. After they had voluntarily accompanied the officers to the victim's home, where they were identified

by the neighbor, the men were placed under arrest. Investigation revealed that the screen door was unlocked and fresh pry marks were on the sliding glass door, conditions which did not exist at the time that the victim last left her home.

Appellant neither testified nor offered a defense in the case. At the end of the State's case and without argument, he made "a motion" (presumably for a judgment of acquittal), which was denied. Appellant was then advised of his right to testify or remain silent and, having elected to remain silent, rested and presented no witnesses. He did not move for judgment of acquittal at that time; however, after the trial judge had instructed the jury, his counsel, at the bench, stated:

MR. HILL: [Appellant's counsel]

Fine with me. For the record, we will make a motion for judgment of acquittal, since we closed our case; and just by way of argument, would indicate to the court that the defendant is charged with attempted breaking and entering. The State has put into evidence that the screen door was, in fact, open. I think the opening of the screen door is, in fact, a breaking in of the house, and it is a breaking, and he could not be found guilty of attempted breaking because, in fact, a breaking took place.

The court denied the motion.

Appellant contends, relying on *Felkner v. State*, 218 Md. 300, 307, 146 A.2d 424 (1958) and *Reed v. State*, 7 Md.App. 200, 204, 253 A.2d 774 (1969),[2] that the State did not produce sufficient evidence from which the jury could find an intent to steal. Aside from the noting that the proof in this case was, at most, that a "mere breaking" had occurred, without injury, appellant does not attempt to argue the ground

---

2. In his brief, appellant refers to *Williams v. State*, 7 Md.App. 241, 243–45, 254 A.2d 376 (1969), giving the citation for Reed. Although Williams appears to be relevant to his position, because Reed is more on point, we have assumed that appellant meant Reed.

advanced by counsel below, i.e., that the proof of a completed act prohibits conviction of an attempt to commit that act.

■ Since the argument made on appeal was neither raised nor decided by the court below, it is not properly before us and we will not address it. Md.Rule 1085.

■ The State suggests that the appellant's failure to present the basis for his motion for judgment of acquittal at the time the motion was made waives appellant's right to raise, on this appeal, any ground which he could have or should have raised at that time. Md.Rule 1085; *Lyles v. State,* 63 Md.App. 376, 379–382, 492 A.2d 959, *cert. granted,* 304 Md. 362, 499 A.2d 191 (1985). While we agree with the proposition, we disagree that it applies to the case *sub judice.* Appellant did preserve for review the ground presented to the court without objection after the jury had been instructed. We see no impropriety in making a motion for judgment of acquittal after the jury has been instructed, where the State does not object and the court rules on that motion.

## II.

At the sentencing procedure, appellant challenged the legality of the imposition of a mandatory sentence in his case, contending that the absence, in the various jurisdictions in the State of Maryland, of a uniform policy governing when mandatory sentencing should be pursued renders a sentence imposed pursuant to § 643B(c) arbitrary and capricious. To support the argument, he presented testimony as to the policies, or lack thereof, of eighteen of Maryland's jurisdictions. That testimony showed that: nine counties had not been presented with qualifying cases, of which two had no policy; of the seven that did, the policy in six was to automatically file in a qualified case and the other to proceed on a case by case basis; and nine jurisdictions had had experience with mandatory sentencing cases; four of which had a policy of filing automatically and the remainder either proceeded on a case by case basis or

considered mitigating factors in each case prior to filing. Baltimore County's policy was reported to be to seek the mandatory sentence in all "provable" cases, unless the prosecutor deemed a substantial injustice would result. The testimony was that no "substantial injustice" case had yet arisen in Baltimore County.

Appellant presents two bases for his argument that § 643B(c) is unconstitutional. First, he contends that it does not provide for or permit consideration of, the individualized circumstances of particular defendants and, further, that it permits the imposition of "disporportionate sentences" in violation of the Eighth and Fourteenth Amendments of the Federal Constitution. Secondly, he asserts that it is arbitrarily applied. Specifically, he posits:

> [S]entencing involves an appropriate exercise of discretion. Article 27, § 643B places this discretion in the hands of the prosecutor rather than the trial court, but provides no means for determining how this discretion should be exercised. Because of this, a situation radically different from that which exists in ordinary sentencing has evolved: Some defendants have their cases reviewed to determine if a mandatory sentence is appropriate, while others do not. This interjects a form of arbitrariness into sentencing which is wholly inappropriate, and which renders sentencing under this statute unconstitutional.

### Individualized Sentencing

Very recently, in *Bryan v. State*, 63 Md.App. 210, 492 A.2d 644 (1985) and *Teeter v. State*, 65 Md.App. 105, 117–119, 499 A.2d 503 (1985), this Court rejected attacks on § 643B(c) identical to that *sub judice*. We have been provided with no basis, and we have found none, which causes us to abandon so recent a precedent. Therefore, for the reasons set forth in *Bryan* and *Teeter*, we again reject this argument.

Arbitrariness and Capriciousness

We do not share the State's belief that *Teeter* is dispositive of this issue. In *Teeter*, the issue was whether the lack of judicial discretion in the mandatory sentence context rendered § 643B(c) unconstitutional; here, however, the focus of appellant's argument is the lack of a uniform standard for the exercise of prosecutorial discretion to initiate the mandatory sentencing process, which appellant contends, unconstitutionally denies a defendant sentenced pursuant to § 643B(c) equal protection of the law, a contention not heretofore considered.

Section 643B(c) and (d) provides:

(c) *Third conviction of crime of violence.* —Any person who (1) has been convicted of two separate occasions of a crime of violence where the convictions do not arise from a single incident, and (2) has served at least one term of confinement in a correctional institution as a result of a conviction of a crime of violence, shall be sentenced, on being convicted a third time of a crime of violence, to imprisonment for the term allowed by law, but, in any event, not less than twenty-five years. Neither the sentence nor any part of it may be suspended, and the person shall not be eligible for parole except in accordance with the provisions of Article 31B, § 11.

(d) *Compliance with Maryland Rules.* —If the State intends to proceed against a person as a subsequent offender under this section, it shall comply with the procedures set forth in the Maryland Rules for the indictment and trial of a subsequent offender.

Although § 643B(c) speaks in mandatory terms, subsection (d) makes clear beyond peradventure that whether to pursue a mandatory sentence is discretionary with the prosecutor. *See Teeter*, 65 Md.App. at 119, 499 A.2d 503. It is this discretion as to which there is no uniform standard for its exercise and as to which appellant objects.

■ At the outset, it is important to understand the nature of the decision to pursue a mandatory sentence. We think it is part of the prosecutorial function, rather than a sentencing function. It is true that the decision has significant, and perhaps paramount, implications as to sentencing since the judge has no discretion as to the sentence once the prosecutor has initiated the process, See Md.Rule 4–245, and the statutory predicate has been proven. But, *it is incumbent upon the prosecutor to prove the predicate and only then do the sentencing implications,* previously only a possibility, become a reality. Moreover, notwithstanding his or her lack of discretion in that regard, the judge, not the prosecutor, must impose the sentence that the legislature prescribed. *See Teeter, supra,* 65 Md.App. at 119, 499 A.2d 503. We believe further that when appellant complains about the lack of a uniform standard by which this discretion is to be exercised and the fortuity of place, personality, and philosophy that is thus introduced into the sentencing process, he is really arguing that a system of selective enforcement of § 643B(c) is fostered and that it is this selective enforcement that denies one sentenced as a repeat offender equal protection of the law.

■ In *Oyler v. Boles,* 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962), a West Virginia habitual criminal statute providing for a mandatory life sentence upon a third conviction "of a crime punishable by confinement in a penitentiary" was attacked as denying equal protection of the law to persons sentenced under it because, although the statute imposed a mandatory duty on prosecutors to seek the severer penalty against all persons coming within its terms, prosecutors sought such penalties only in a minority of cases. The petitioners supported their argument with statistical data. The Court rejected the argument. After noting that the statistics did not establish selective enforcement, it said:

> Moreover, the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation. Even though the statistics in this case might imply

a policy of selective enforcement, it was not stated that the selection was deliberately based upon an unjustifiable standard, such as race, religion, or other arbitrary classification. Therefore grounds supporting a finding of a denial of equal protection were not alleged. (citations omitted)

*Id.* at 456, 82 S.Ct. at 505.

The Court, in *Wayte v. U.S.*, —— U.S. ——, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985), was faced with the issue of whether passive enforcement[3] of the President's Proclamation requiring certain male citizens to register with the Selective Service System comported with equal protection. Recognizing that prosecutorial discretion, though broad, is not unfettered, and, further, that such claims are to be measured by ordinary equal protection standards, *id.* 105 S.Ct. at 1531, the Court said:

... [T]hese standards require petitioner to show both that the passive enforcement system had a discriminatory effect and that it was motivated by a discriminatory purpose. (Citations omitted)

*Id.* To like effect, *see Moss v. Hornig,* 314 F.2d 89, 92 (2d Cir.1963), citing *Snowden v. Hughes,* 321 U.S. 1, 8, 64 S.Ct. 397, 401, 88 L.Ed. 497 (1944) ("To show that unequal administration of a state statute offends the equal protection clause one must show an intentional or purposeful discrimination."); *Shaw v. Martin,* 733 F.2d 304, 312–13 (4th Cir. 1984); *Giant of Maryland, Inc. v. State's Attorney for Prince George's County,* 267 Md. 501, 517, 298 A.2d 427 (1973); *Drews v. State,* 236 Md. 349, 354, 204 A.2d 64 (1964).

Implicit in this standard are the recognition that the prosecutor necessarily must have broad discretion and the policy of not unduly restricting its exercise. Although directed specifically to the discretion to initiate a prosecu-

---

**3.** A system of prosecuting only cases contained in a file consisting of letters from non-registrants advising that they would not register and of letters reporting non-registrants.

tion, the comments of the Court in *Wayte* are particularly pertinent:

> This broad discretion rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review. Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake. Judicial supervision in this area, moreover, entails systemic costs of particular concern. Examining the basis of a prosecution delays the criminal proceeding, threatens to chill law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy. All these are substantial concerns that make the Courts properly hesitant to examine the decision whether to prosecute.

*Id.* at 105 S.Ct. at 1531. Our courts have recognized the prosecutor's "broad" discretion, *In Re Robert G.,* 296 Md. 175, 177, 461 A.2d 1 (1983), *Murphy v. Yates,* 276 Md. 475, 489, 348 A.2d 837 (1975), both in the context of the initiation of a prosecution, *Giant of Md., supra; Drews, supra,* and in the mandatory sentencing context. *Teeter, supra.* And our courts have recognized that the propriety of a prosecution does not depend upon the prosecution or lack of prosecution of others who may qualify for prosecution for the same acts. *Giant of Md., supra,* 267 Md. at 517, 298 A.2d 1427; *Drews, supra,* 236 Md. at 354, 204 A.2d 64.

Turning to the instant case, appellant's evidence certainly tended to show an absence, in Maryland, of a uniform policy for pursuing mandatory sentencing and, thus, by inference, perhaps the discriminatory effect of that lack of policy; however, it did not, indeed, it did not purport to, prove, either that the lack of uniformity was motivated by a discriminatory purpose, *Wayte, supra,* or that pursuing mandatory sentencing *in appellant's case* was based on an

unjustifiable standard. *Boles, supra.* In the absence of such a showing, appellant has failed to prove, as he must, *Wayte, supra,* 105 S.Ct. at 1531, that he was denied equal protection of the law.

### III.

Appellant next argues that his sentence is unconstitutional because not "reviewed to determine whether it is disporportionate." This argument was considered and rejected in *Bryan, supra,* 63 Md.App. at 217–19, 492 A.2d 644. We do likewise.

### IV.

At the sentencing proceedings, the following colloquy occurred:

MR. HILL [Appellant's counsel]: At this point, Your Honor, I would address the Court that my understanding is that under Article 27, Section 643B that the underlying convictions themselves have to be constitutional in order for the State to use them. In order for those convictions to be constitutional, I think the State has to prove: (1) that he was represented by counsel, and (2) if a guilty plea was taken, that that plea was taken knowingly and voluntarily, after being advised of his rights.

At this point I don't think the testimony elicited from Detective Walton points that out. It indicates that at some point in the proceedings he was represented. They do not indicate in any of those docket entries that he was advised of his rights in open court, that he understood those rights, and that he waived those rights and voluntarily entered into the plea. And I think absent the State's proving that, that they can't proceed and use those two convictions in this particular instance.

THE COURT: Mr. Moore?

MR. MOORE [the prosecutor]: With all due respect, I believe Mr. Hill has the burden a little bit misconstrued, Your Honor. And I really do mean that with all due respect, as we are advocates in court here this morning. The State does not have the burden at every stage to show that something is constitutional. We would be here forever if at every stage of every proceedings we had to show that everything was constitutional.

Basically the records from Baltimore City, that have been certified, indicate that there was counsel present. And Detective Walton said that on one certified copy there was even an indication that the rights were given, which he found to be very unusual; he had never seen it before in about two years. So I believe that the court can infer that, in fact, the constitutional burdens were met, that he had been advised of his rights and that he was represented by an attorney, and its for the defense to show that he wasn't.

THE COURT: What is your conception of the State's burden in this type of proceedings, Mr. Hill?

MR. HILL: My contention of the burden is, Your Honor, that they have to prove that he had the necessary predicate convictions. Besides proving those necessary predicate convictions, they must—

THE COURT: Are you talking about a preponderance of the evidence or—

MR. HILL: I believe it's reasonable doubt, Your Honor.

MR. MOORE: Well, I'd just like to see a case on that, if he has one.

THE COURT: You'd what?

MR. MOORE: I'd like to see a case on that, because it's my understanding that it's a preponderance.

THE COURT: That's the Court's conception, too. If I'm wrong—

MR. HILL: Even if it is a preponderance, Your Honor, still I think the State has the burden of proving that those underlying convictions were constitutional, and I

think they have to show affirmatively that he was represented by counsel, and that he knowingly and voluntarily waived those rights.

There is a way to do it, and the State has access to it, and that is to request a transcript and bring it in and produce it for the Court. They have not done that. It's easy enough to see if Judge Raine advised Mr. Middleton of all his rights as far as that guilty plea is concerned, or the City judge in that particular instance. They haven't done that.

I think it's their burden, since they are they moving party. They are the ones that are requesting this sentence. They're the moving party. It's their burden to prove those underlying convictions and prove the constitutionality of those underlying convictions.

THE COURT: Very well.

MR. MOORE: Just one comment, Judge. Again, with all due respect, Mr. Hill does not have any case law based on this. The State has set out a prima facia case in each instance that the defendant was convicted of two crimes of violence, and that he was represented by an attorney in Baltimore City and in Baltimore County, and for Mr. Hill at this point to shift the burden to the State, to have to make us bring in a transcript, when the inference is there and a prima facia case has been met, is just—it seems they would like to shed some weight from the defense and place it on the State. We have tried to do everything to the letter of the law, and that's why we're here this morning.

THE COURT: At this time the Court will deny the motion.

From the colloquy, appellant argues that the trial judge applied the wrong burden of proof to the determination that he qualified as a recidivist under § 643B(c). He seeks, as a result, a new sentencing hearing.

It is now clear beyond doubt that in § 643B(c) proceedings, the State must prove, beyond a reasonable doubt, that

the person on trial qualifies as a recidivist under the statute. *Irby v. State*, 66 Md.App. 580, 505 A.2d 552, 554 (1986); *Teeter*, 65 Md.App. at 112, 499 A.2d 503; *Sullivan v. State*, 29 Md.App. 622, 631, 349 A.2d 663 (1976). This includes proof of the predicate convictions.

The State does not dispute that proof beyond a reasonable doubt is the appropriate standard; rather it suggests that the colloquy was directed at the burden the State bore with respect to proof of the constitutional validity of the predicate convictions. We do not agree. First, the colloquy belies the State's position; secondly, it really makes no difference.

The State correctly points out that, prior to the court's question concerning the burden of proof, appellant's focus was a limited one—the State's obligation to prove the constitutionality of the predicate convictions; however, the court's question was not so limited: it was addressed to the burden of proof in "this type of proceedings"; nor was its focusing of its subsequent question in light of appellant's response. It was in this context that the court stated its "conception" of the burden of proof was, consistent with that of the State, "a preponderance." Patently that conception is erroneous.

■ In order that a prior conviction be used either for impeachment or as a predicate conviction for § 643B(c)'s mandatory sentence, it must have occurred when a defendant was represented by counsel or validly waived counsel, *U.S. v. Tucker*, 404 U.S. 443, 445, 92 S.Ct. 589, 590, 30 L.Ed.2d 592 (1972); *Burgett v. Texas*, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967); *Carroll v. State*, 19 Md.App. 179, 182–86, 310 A.2d 161 (1973); *Moore v. State*, 17 Md. App. 237, 241–45, 300 A.2d 388 (1973); *Johnson v. State*, 9 Md.App. 166, 176–79, 263 A.2d 232 (1970), or, in the case of a guilty plea, it must have resulted from the defendant's free and voluntary plea, the proof of which, for purposes of § 643B(c), in an appropriate circumstance, must also be beyond a reasonable doubt. Therefore, it makes no differ-

ence as to which aspect of the proof the colloquy was directed.

■ The bone of contention between appellant and the State was, in addition to the allocation of the burden of proof, the method of meeting it. Because the test of sufficiency of the evidence is whether any rational trier of fact, viewing the evidence presented in the light most favorable to the State, could find the evidence sufficient beyond a reasonable doubt, *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Tichnell v. State*, 287 Md. 695, 717, 415 A.2d 830 (1980), proof need not be adduced in any special or particular way, nor must a proposition be proven only by use of certain kinds of evidence. The question then is not whether the State could have proven the convictions by introducing a transcript of the prior proceedings, but, rather, whether what the State had already produced was sufficient to permit the trier of fact to conclude that it had met its evidentiary burden; could, in short, the trial judge have found beyond a reasonable doubt that the convictions alleged were constitutionally valid?

The issue thus becomes, in the context of this case, must the State prove as a separate matter in every instance that the defendant was represented by counsel or that a plea, in case of conviction pursuant to a plea of guilty, was free and voluntary?

In *Burgett*, the State sought enhanced punishment of the defendant pursuant to its recidivist statute. Its proof of one prior conviction consisted of introducing certified records, which on their face raised a presumption that the defendant was denied his right to counsel. In reversing the defendant's conviction, the Court said:

> To permit a conviction obtained in violation of *Gideon v. Wainwright* [372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) ] to be used against a person either to support guilt or enhance punishment for another offense (*see Greer v. Beto*, 384 U.S. 269 [86 S.Ct. 1477, 16 L.Ed.2d 526 (1966) ])

is to erode the principle of that case. Worse yet, since the defect in prior conviction was denial of the right to counsel, the accused in effect suffers anew from the deprivation of that Sixth Amendment right.

*Id.* 389 U.S. at 115, 88 S.Ct. at 262. Despite its having arisen in the context of an enhanced punishment proceeding, we applied *Burgett* to the use of prior convictions for impeachment purposes, holding that

> "the *Burgett* principle serves to exclude evidence of a prior conviction offered for the purpose of impeaching the credibility of an accused testifying on his own behalf when it is established that such conviction was obtained absent representation by counsel or a valid waiver thereof."

*Johnson, supra,* 9 Md.App. at 175, 263 A.2d 232. We also set forth a mandatory procedure, *Carroll, supra,* 19 Md. App. at 185, 310 A.2d 161, to be followed when an objection is made that a conviction is constitutionally invalid.

> The court shall ... conduct a hearing. .. At the hearing the State shall first have the burden of producing evidence of a prior conviction, unless admitted by the defendant, sufficient to justify a finding by the court that the defendant has suffered such previous conviction.... When this showing has been made the defendant must produce evidence tending to establish that his constitutional right to counsel was infringed in the prior proceeding at issue.... The burden is then upon the State to prove by clear and convincing evidence that the defendant's constitutional right to counsel was not infringed at the prior proceeding....

*Id.* 9 Md.App. at 177–78, 263 A.2d 232. *See also Carroll, supra,* 19 Md.App. at 184, 310 A.2d 161; *Moore, supra,* 17 Md.App. 242–43, 300 A.2d 388.

We conclude, consistent with the precedents from this Court and our sister jurisdictions,[4] that, unless the issue of the constitutional invalidity of a prior conviction is generated by the defendant, on the face of the documents offered to prove the conviction, or by the circumstances, the State need not prove, either as an initial or separate matter, that the defendant was represented by counsel or that the defendant's prior guilty plea was freely and voluntarily entered. In other words, when no such issue has been generated, a certified record is sufficient to permit the trial judge to find beyond a reasonable doubt the predicate convictions mandated by § 643B(c). The issue is generated by proffer or by offering evidence; it is not sufficient merely to argue possibilities or failure of proof. *See State v. Gosselin,* 117 N.H. 115, 370 A.2d 264, 270 (1977). We conclude otherwise than did *Johnson* and *Carroll* as to the standard of proof to be met once the issue is generated. Given the serious consequences which flow from § 643B(c) proceedings and the burden we have enunciated with respect to the fact of conviction in such proceedings, we believe that when the State must prove the constitutional validity of a conviction, it must do so beyond a reasonable doubt.

Turning to the case *sub judice,* we have been unable to find in the record the certified records admitted into evidence. We note, however, that the transcript of the proceedings reflects that they show that counsel's appearance for appellant was noted in the prior cases; thus, the records on their face do not contain a presumption that appellant was unrepresented. The transcript also shows that the certified records are silent as to the extent or nature of the guilty plea proceedings. Appellant neither testified nor proffered that he was unrepresented or that

---

4. *State v. Gosselin,* 117 N.H. 115, 370 A.2d 264, 269–70 (1977); *Com. v. Charles,* 339 Pa.Super. 284, 488 A.2d 1126, 1131–32 (1985); *Eutsey v. State,* 383 So.2d 219, 226 (Fla.1980); *State v. Garcia,* 95 N.M. 246, 620 P.2d 1271, 1275 (1980); *State v. Garcia,* 92 N.M. 730, 594 P.2d 1186, 1188–89 (Ct.App.1979); *State v. Dawson,* 91 N.M. 70, 570 P.2d 608, 611 (Ct.App.1977).

his pleas were not freely and voluntarily entered. No issue of the constitutional validity of the prior convictions therefore has been generated. In the absence of evidence to the contrary, the judge presiding over a 643B(c) proceedings may justifiably presume that a judge presiding over the prior conviction case knew the law and properly applied it. *Hebb v. State,* 31 Md.App. 493, 499, 356 A.2d 583 (1976). Moreover, there is not in the record even the hint that the fact of the prior convictions was disputed. As we have seen, the entire thrust of appellant's case concerning the proof of the predicate convictions was that the State had the duty to prove, initially and as a separate matter, that, as to each, he was represented or waived counsel and freely and voluntarily entered a guilty plea. Therefore, in the context of the unique facts of this case, we conclude that the trial judge's erroneous conception of the proper burden of proof played no role in his finding the fact of the predicate convictions. Where, as here, the fact of the prior convictions is not disputed and the evidence presented to prove them is clearly sufficient, no issue of the burden of proof is presented.

## V.

 Relying on *Williamson v. State,* 284 Md. 212, 395 A.2d 496 (1979) and asserting that while the imposition of a mandatory sentence, if the statutory predicate is proven, is mandatory, but the decision to pursue mandatory sentencing, discretionary, appellant contends that the Baltimore County State's Attorney's policy of proceeding in every provable qualifying case "eliminate[s] any real exercise of discretion". Thus, he says, his "sentence should be vacated and his case remanded so that the State may exercise its discretion on a proper basis."

*Williamson,* which involved the failure of a trial judge to exercise his discretion to suspend, consistent with *State v. Wooten,* 277 Md. 114, 352 A.2d 829 (1976), all or any part of a mandatory life sentence, is, of course, inapposite. What

**180**

we said in part II b, *supra,* however, is dispositive of this issue as well.

## VI.

██ Appellant's final volley is directed at the State's nolle pros in the District Court of a breaking and entering charge, which arose out of these same facts. He argues that this act barred trial in the circuit court for three reasons:

(1) the prosecutor did not provide, pursuant to Md.Rule 4–247(a), a reason for the nolle pros;

(2) the filing of a criminal information after entry of a nolle pros violates the prohibition against double jeopardy; and

(3) the prosecutor may not recharge an offense which he or she has previously nolle prossed.

None of these arguments has merit. The first is not before us; it was neither tried, nor decided in the court below. Md.Rule 1085. The second and third have previously been considered and rejected. *Ward v. State,* 290 Md. 76, 82–85, 427 A.2d 1008 (1981).

JUDGMENTS AFFIRMED.

COSTS TO BE PAID BY APPELLANT.