514 A.2d 1229

**Drexel Otto DAVIS**

v.

**STATE of Maryland.**

**No. 1631, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

Sept. 9, 1986.

---

Gary S. Bernstein (Rochlin and Settlemen, P.A., on brief), Baltimore, for appellant.

Richard B. Rosenblatt, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Baltimore, Sandra A. O'Connor, State's Atty. for Baltimore County and S. Ann Brobst, Asst. State's Atty. for Baltimore County, Towson, on brief, for appellee.

Argued before MOYLAN and ADKINS\*, JJ., and JAMES S. GETTY, Associate Judge of the Court of Special Appeals (retired), Specially Assigned.

ADKINS, Judge, Specially Assigned.

In the Circuit Court for Baltimore County, appellant, Drexel Otto Davis, was convicted of daytime housebreaking. Code, Art. 27, § 643B (a) defines daytime housebreaking as a crime of violence. Pursuant to § 643B (b), Davis was sentenced to life imprisonment without the possibility of parole. Section 643B (b) provides:

---

\* Adkins, J., participated in the argument and conference of this case and although appointed to the Court of Appeals of Maryland, August 15, 1986, he is specially assigned to this Court with respect to all cases in which he was a member of the panel.

Any person who has served three separate terms of confinement in a correctional institution as a result of three separate convictions of any crime of violence shall be sentenced, on being convicted a fourth time of a crime of violence, to life imprisonment without the possibility of parole. Regardless of any law to the contrary, the provisions of this section are mandatory.

Davis now questions the sufficiency of the evidence to sustain his conviction. He questions more strenuously the establishment of the statutory predicates for his mandatory life sentence, specifically, whether the trial judge erred in finding that he had been convicted of three previous crimes of violence and thrice confined as a result thereof. Finally, he ardently attacks, on both equal protection and eighth amendment grounds, the constitutionality of his sentence.

### *Sufficiency of the Evidence*

"In reviewing a record for the sufficiency of evidence to support a criminal conviction, the standard we apply is 'whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.' " *Waddell v. State,* 65 Md.App. 606, 618, 501 A.2d 865 (1985) (quoting *Jackson v. Virginia,* 443 U.S. 307, 318, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560 (1979)). Davis was convicted of "breaking a dwelling house in the daytime ... with intent to steal ... the personal goods of another of any value therefrom ..." Art. 27, § 30(b).

The record shows that the victim's home was secure when he left it at 9:00 a.m. on the day of the crime. It was open when he returned in mid-afternoon. There were signs of forcible entry. Davis's fingerprint was found on a window. On the day of the crime, Davis was seen wearing a Sunpapers jacket near the victim's home. A jacket of that description was later determined to be missing from the victim's home. Next to Davis was a bucket of coins (the coins were later identified by the victim as his son's). Davis proffered no non-culpable explanation for the presence of

his fingerprint and no explanation for his possession of the coins. This evidence was sufficient to support his conviction of daytime housebreaking.

### Conviction of Previous Crimes of Violence

The State charged that Davis had previously been convicted of eight crimes of violence. The trial court ruled that the State failed to prove four of them, but accepted the remaining four. One of these, a 1975 daytime housebreaking conviction in Anne Arundel County, Davis concedes to be valid. Thus, if the State established any two of the remaining three convictions (plus Davis's confinement as a result thereof) the predicates of § 643B(b) were met.

Two of the convictions questioned by Davis involve charges brought against Davis in the erstwhile Criminal Court of Baltimore, in cases numbered 28119616 and 28119621. The former concerned an incident that took place on January 19, 1981, the latter one that occurred on February 1, 1981. Each case involved a different location and victim. On October 28, 1981, Davis entered a plea of guilty to the third count of the information filed in each case. The third counts were identical. Each read thus:

And the State's Attorney aforesaid ..., inform[s] the said Court that the said Defendant ..., on the said date, at the said place, unlawfully did break the dwelling house of the said Complainant, at the aforesaid location, with intent to steal, take and carry away therefrom the goods and chattels, monies and properties of value, of the said Complainant contrary to the form of the Act of Assembly, in such case made and provided, and against the peace, government and dignity of the State (Art. 27, Sec. 30 b).

Davis is of the view that his convictions under these counts were invalid because each count failed to charge an offense. This is so, he thinks, because each count omits an allegation that the crime occurred "in the daytime." He perceives "daytime" as an essential element of the crime

defined by Art. 27, § 30(b), just as "nighttime" is an essential element of the crime of burglary.

■ We disagree. In *Reagan v. State*, 4 Md.App. 590, 596, 244 A.2d 623 (1968), we explained that "the omission of an allegation that [the offense occurred in the daytime] is neither a matter of substance ... nor an essential element or fact ..." The "daytime" aspect of § 30(b) is not used to define or characterize the crime, but merely to distinguish it from burglary.

■ Moreover, even were it otherwise, Davis would not prevail. The third count of each of the 1981 informations made specific reference to Art. 27, § 30(b) as being the statute underlying the charge. Because each count was framed in that manner, each incorporated by reference the essential elements of the offense. *See Whitehead v. State*, 54 Md.App. 428, 445, 458 A.2d 905, *cert. denied*, 296 Md. 655 (1983).

■ Since the State proved that Davis previously had been convicted of three crimes of violence, we need not examine the sufficiency of the other convictions challenged by him. That particular predicate for the operation of § 643B(b) was established.

### *Incarceration as a Result of Prior Convictions*

As we have seen, the invocation of § 643B(b) requires proof both of at least three prior convictions of crimes of violence and of at least three incarcerations as a result thereof. Davis claims this second prerequisite was not met because his identity as prisoner was not demonstrated adequately.

This contention is based on the testimony of Detective Leonard Butt. Butt compared fingerprint records from the Division of Correction, and from the Baltimore County Police Department with prints he had taken from Davis. On the basis of these comparisons, he identified Davis as

the individual who had been at least thrice incarcerated for the crimes of violence of which Davis had been convicted.

■ Davis argues that Butt, who had not been certified by the International Association for Identification, should not have been allowed to testify as a fingerprint expert. The record shows, however, that Butt had been a member of the Baltimore County Crime Laboratory for three years, and of its Latent Print Identification Unit for a year and a half. During that time he had examined nearly 2,500 individual prints. He had taken courses dealing with fingerprinting and had previously testified in the Circuit Court for Baltimore County as an expert in latent print comparison. Davis concedes that the acceptance of an individual as an expert is within the discretion of the trial court. Given the record before us, we hold that the court was neither clearly erroneous nor did it abuse its discretion when it admitted Butt as a fingerprint expert. *Winkles v. State*, 40 Md.App. 616, 622–23, 392 A.2d 1173 (1978).

■ Davis also would have us reject Butt's identification testimony because of the presence on a fingerprint card of some features that might have been either extraneous marks or fingerprint characteristics. Butt admitted that another examiner might disagree as to whether these features were fingerprint characteristics or dirt. But Davis produced no other expert to question Butt's identification, and Butt's admission went only to the weight or credibility of his testimony. *See Trimble v. State*, 300 Md. 387, 404, 478 A.2d 1143 (1984). That Davis could question Butt's testimony rendered it neither inadmissible nor insufficient, if believed, to establish Davis's identity as the person who had been incarcerated.

■ Butt's testimony, taken together with the presumption that "[i]dentical names give rise to a presumption [inference] of identity of person," *Bowers v. State*, 298 Md. 115, 130, 468 A.2d 101 (1983) (quoting 1 *Wharton's Criminal Evidence*, § 103 (C. Torcia, 13th ed. 1972)), was sufficient to render the fact-finder's decision as to Davis's incar-

ceration not clearly erroneous. Davis's full name—Drexel Otto Davis—is sufficiently unusual to support the inference. Thus, the second predicate for the operation of § 643B(b) was established adequately.

## Constitutional Questions

Davis's constitutional challenges are bifurcated. One raises equal protection concerns; the other the issue of the infliction of cruel and unusual punishment in violation of the eighth amendment to the United States Constitution.

The equal protection argument rests on what Davis sees as a lack of uniformity, as among the various Maryland State's Attorney's Offices, in the invocation of the mandatory sentencing law. He also contends that the Baltimore County State's Attorney has used or eschewed that law in non-uniform fashion within that county.

■ We addressed and rejected similar arguments in *Middleton v. State,* 67 Md.App. 159, 506 A.2d 1191 (1986). There we explained that merely showing the existence of a lack of uniform policy in pursuing mandatory sentencing is not enough. To succeed in an equal protection claim, an appellant also must show either that the policy is motivated by a discriminatory purpose or that the invocation of mandatory sentencing in a particular case was based on an unjustifiable standard, such as race, religion, or some other arbitrary classification. 67 Md.App. at 168–172, 506 A.2d 1191. As was the case with the appellant in *Middleton,* Davis has failed to make this additional showing. For the reasons stated in *Middleton,* we reject his equal protection argument.

Davis's eighth amendment claim is less easily disposed of. Citing *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), he asserts that his sentence is disproportionate to the offense committed. He urges us to undertake a proportionality review like that outlined in *Solem,* 463 U.S. at 292, 103 S.Ct. at 3010: "[A] court's proportionality analysis under the Eighth Amendment should be guided

by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." If we apply those standards, says Davis, we must hold his life sentence without parole to be in violation of the eighth amendment. We agree.

In both *Middleton* and *Bryan v. State*, 63 Md.App. 210, 492 A.2d 644 (1985), we considered and rejected eighth amendment challenges to the mandatory sentencing law. Both of those cases involved mandatory sentences of 25 years imprisonment without parole under § 643B(c). In *Bryan* we distinguished *Solem* in part because *Solem* involved a life sentence without parole, whereas § 643B(c) involved only a 25–year sentence without parole, thus providing "some hope of an eventual release from prison." 63 Md.App. at 219, 492 A.2d 644. The *Middleton* panel disposed of that appellant's eighth amendment challenge on the basis of *Bryan*. 67 Md.App. at 172.

By contrast with *Bryan, Middleton,* and with *Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980), which the State contends is controlling here, this case concerns a life sentence without the possibility of parole. Only one other penalty authorized by Maryland law, capital punishment, exceeds its severity. In this vital way, this case and *Solem* are alike. Keeping in mind that it is "a matter of principle that a criminal sentence must be proportionate to the crime for which the defendant has been convicted," *Solem*, 463 U.S. at 290, 103 S.Ct. at 3009, we are compelled to consider the three objective criteria articulated in *Solem* as a guide for eighth amendment proportionality analysis.[1]

---

**1.** Other jurisdictions agree that a *Solem* proportionality review is in order when a life sentence without possibility of parole is involved. *See United States v. Rhodes*, 779 F.2d 1019, 1028 (4th Cir.1985). *See also Whitmore v. Maggio*, 742 F.2d 230 (5th Cir.1984) in which a proportionality review was ordered for a petitioner, facing a 128 year

## A. The Gravity of the Offense and The Harshness of the Penalty

In evaluating the claim of Davis that his penalty was too harsh for the offense of daytime housebreaking, we first examine the operation of the Maryland recidivist law. Section 643B(b) may not be invoked unless an offender has been convicted of at least four "crimes of violence." Davis satisfied this prerequisite by being convicted of three prior daytime housebreakings plus the instant daytime housebreaking. Daytime housebreaking is classified by § 643B(a) as a crime of violence.

Were we dealing with an attack on the facial constitutionality of § 643B(b) we might proceed no further. Daytime housebreaking is a crime, like burglary, that raises the very real possibility of serious harm to persons or property. Hence, the inclusion of this offense as a predicate "violent crime" for § 643B(b) purposes is not necessarily disproportionate under eighth amendment analysis. But Davis argues that the statute is unconstitutional as applied to him. Accordingly, we must go further in our analysis. Just as the Supreme Court measured the relative gravity of the crimes Helm actually committed, despite the fact that they were classified as felonies, so too must we be undeterred by the label "crime of violence" and consider the facts of the crimes Davis actually committed. In so doing, we discover that, although the housebreakings committed by Davis are classified as crimes of violence, in fact they were not violent at all. In none was there any evidence to suggest that he was armed with a dangerous weapon when he committed them. Like Helm's crime, the crimes committed by Davis involved neither violence nor the threat of violence to any person.

In the case before us, Davis was convicted of stealing items worth little more than $100. Of the four other

---

sentence, who had committed far more serious crimes than those committed here.

convictions the State urges us to use to enhance his sentence, the two most recent were for stealing items of even lesser value. The January 1981 offense involved the theft of $80. In the February 1981 crime, Davis stole ten chocolate chip cookies and a quarter pound of salami lunch meat, items whose total worth was put at $1.50. Only in his two earliest convictions in 1966 and 1975, did Davis steal items of greater value. In 1966, Davis broke into a home and stole cash and jewelry valued at $1,187. In 1975, in a daytime housebreaking, he took jewelry and cash valued at $1,128. In none of these four cases, however, does the record suggest that Davis used a weapon or encountered anyone during the commission of his crimes. The gravity of these offenses is widely disproportionate to the seriousness of Maryland's penultimate penalty.[2]

### B. Sentences Imposed on Other Crimes in the Same Jurisdiction

The *Solem* court, in weighing this criterion, conceded that Helm had received an equally severe or more severe punishment than criminals convicted of far more serious crimes. We find the same is true in the case *sub judice*. Repeat criminals convicted of unarmed housebreaking or burglary in which lives are in fact not threatened are given the same harsh sentence as criminals who have committed three prior murders, rapes, robberies, or other violent crimes with the use of a weapon. On the other hand, repeat offenders of other more serious crimes would not receive as harsh a penalty as Davis. For example, the following obviously violent crimes, even if repeated four times, would not result in the automatic imposition of a life sentence without possibility of parole because they are not included under § 643B(a): burglary with explosives (§ 34), child abuse (§ 35A), and third degree sexual offense (§ 464B). Poison-

---

**2.** We do not mean to suggest that the value of the property taken is necessarily the most critical consideration when analyzing this first factor. Had Davis's prior offenses involved actual violence, for example, the value of property stolen might well be considered unimportant.

ing water, drink, or food (§ 451) is another crime not covered by the repeat offender provision. Also, Davis would not suffer such a harsh penalty had he been a habitual cocaine distributor, rather than a housebreaker. A person with previous drug convictions would still enjoy a possibility of parole. *See* § 286(b).

After evaluating the sentences that could be imposed on other defendants for other crimes in Maryland, we are convinced that Davis has been treated more harshly than defendants convicted of more serious, life-endangering felonies. As a result, we hold that on the facts of this case, § 643B(c) fails to meet the second objective criterion articulated in *Solem.*

### C. The Sentence Imposed for Commission of the Same Crime in Other Jurisdictions

A survey of the laws in the other 49 states and the District of Columbia reveals that habitual offender statutes differ widely.[3] Maryland's, however, is among the most draconian. If Davis were to be sentenced elsewhere, only in five or fewer jurisdictions would he be able to receive the same life sentence without parole. The jurisdictions are: Delaware, Illinois, South Dakota, and Wyoming, with the possible addition of Mississippi. (Doubt exists as to Mississippi because it is uncertain whether daytime housebreaking is a qualifying crime for the habitual offender's statute in that state.) In Nevada, the court is given the discretion to sentence a repeat offender to life imprisonment without possibility of parole. Contrasted with those states mentioned above is a group of eleven states. In seven of these jurisdictions—California, Connecticut, Minnesota, North Dakota, Oregon, Pennsylvania, and South Carolina—Davis would not qualify as a habitual offender because his crimes are not serious enough. In three other states—Maine, Virginia, and Washington—an habitual offender's statute either does not exist or is being phased out.

---

**3.** In the Appendix we list those statutes.

Lastly, in Ohio, Davis's repeat offenses would not result in a specific penalty, but would only be an aggravating circumstance that would have to be taken into consideration by a judge when imposing a prison term.

In between these two groups that lie at the ends of the sentencing spectrum are the thirty-three other jurisdictions. They either provide an enhanced term of years for habitual offenders, leave the sentencing to the discretion of the trial court, or provide for the possibility of parole if a habitual offender is sentenced to life imprisonment. Thus, in at least one significant way, Davis would not be able to receive an identically severe sentence in any but perhaps six other jurisdictions.

Keeping in mind, then, that only from four to six other states would impose a sentence upon Davis identical to the one he received in Maryland, and at least forty-four other jurisdictions would not, we conclude that the sentence does not meet this third criterion.[4]

As to the few jurisdictions with recidivist statutes similar to Maryland's, we have found no decision sustaining a life sentence without parole under circumstances like those in this case. Courts upholding life sentences without parole have based their decisions in part on the life-threatening conduct of the defendant. *See, e.g., Seritt v. Alabama*, 731 F.2d 728 (11th Cir.1984); *Jackson v. State*, 483 So.2d 1353 (Miss.1986); *State v. Todd*, 313 N.C. 110, 326 S.E.2d 249 (1985); and *Holiday v. Solem*, 383 N.W.2d 871 (S.D.1986). On the other hand, at least one court has rejected a sentence of life imprisonment where a nonviolent crime has triggered the enhancement statute, even though the sentence was tempered by the possibility of parole. *See Wanstreet v. Bordenkircher*, 276 S.E.2d 205 (W.Va.1981) in which the court, prior to *Solem* but after *Rummel*, held that imposition of the recidivist sentence for defendant's

---

**4.** We note that if this case passed constitutional muster as to the first two criteria, problems with meeting the third criterion would not automatically call for a determination of unconstitutionality.

third felony for forgery violated the state's constitutional proportionality principle.

 We recognize that "[o]utside the context of capital punishment successful challenges to the proportionality of particular sentences has been rare," *Rummel,* 445 U.S. at 272, 100 S.Ct. at 1138, and that recidivist statutes serve a legitimate societal purpose. *Id.* at 284–85, 100 S.Ct. at 1144–45. But *Solem,* as we have seen, commands that "a criminal sentence must be proportionate to the crime for which the defendant has been convicted." 463 U.S. at 290, 103 S.Ct. at 3009. On the facts of this case, we hold that Davis's life sentence without the possibility of parole does not meet the *Solem* test. Accordingly, we hold that the sentence imposed on Davis in this case is unconstitutional, because it is in violation of the eighth amendment.

This conclusion in no way invalidates § 643B(b) in general; it merely holds the statute unconstitutional as applied to Davis on the facts of this case. Nor does it mean that Davis will go unpunished. Since we affirm his conviction, we remand the case for imposition of an appropriate sentence.

CONVICTION AFFIRMED. SENTENCE VACATED. CASE REMANDED FOR RESENTENCING CONSISTENT WITH THIS OPINION. COSTS TO BE PAID ONE–HALF BY APPELLANT AND ONE–HALF BY BALTIMORE COUNTY.

## APPENDIX

The following is a list of the other 49 states and the District of Columbia, the habitual offender statutes and, where pertinent, their statutes encompassing the offense of daytime housebreaking.

| | |
|---|---|
| Alabama | Ala.Code §§ 13A–7–6, 13A–5–9 (1975, 1982 Repl.Vol.) |
| Alaska | Alaska Stat. § 11.46.300 (1983), § 12.55.125 (1984) |
| Arizona | Ariz.Rev.Stat.Ann. §§ 13–604 D, 13–1507 (1978, 1985 Cum.Supp.) |
| Arkansas | Ark.Stat.Ann. § 41–1001 (1977 Repl., 1985 Cum.Supp.), § 41–2002 (1977 Repl.) |

| | |
|---|---|
| California | Cal.Penal Code § 667 (1986 Cum.Supp.) |
| Colorado | Colo.Rev.Stat. §§ 16–13–101(2), 17–2–204(1), 18–4–202(2) (1978, 1985 Cum.Supp.) |
| Connecticut | Conn.Gen.Stat. § 53a–40 (1985 Rev.) |
| Delaware | Del.Code Ann. tit. 11, §§ 4214, 825 (1974, 1979 Repl.Vol.) |
| District of Columbia | D.C.Code Ann. § 22–104 (1981) |
| Florida | Fla.Stat.Ann. §§ 775.084 (1976) 810.02 (1986 Cum.Supp.) |
| Georgia | Ga.Code Ann. § 17–10–7 (1985 Cum.Supp.) |
| Hawaii | Hawaii Rev.Stat. §§ 706–661, 708–811 (1976 Repl.) |
| Idaho | Idaho Code § 19–2514 (1979) |
| Illinois | Ill.Rev.Stat. ch. 38 §§ 33B–1, (1982, 1986 Cum.Supp.), 1003–3–3(d) (1982), 1005–5–3(c)(8) (1982, 1986 Cum.Supp.) |
| Indiana | Ind.Code Ann. § 35–50–2–8(e) (1985 Repl., 1986 Cum.Supp.) § 35–43–2–1 (Repl.) |
| Iowa | Iowa Code §§ 902.8, 902.9, 713.5 (1979, 1986 Cum.Supp.) |
| Kansas | Kansas Stat.Ann. § 21–4504 (1981, 1985 Cum.Supp.) |
| Kentucky | Ky.Rev.Stat. § 532.080 (1985 Repl.) |
| Louisiana | La.Rev.Stat.Ann. §§ 15:529.1, 14.62 (1981) |
| Maine | No Habitual Offender Statute |
| Massachusetts | Mass.Ann.Laws, ch. 279, § 25 (1980) |
| Michigan | Mich.Comp.Laws Ann. §§ 769.11 (1982), 750.110 (1982, 1986 Cum.Supp.) |
| Minnesota | Minn.Stat.Ann. § 609.346 (1964, 1986 Cum.Supp.) |
| Mississippi | Miss.Code Ann. § 99–19–83 (1972, 1985 Cum.Supp.) |
| Missouri | Mo.Ann.Stat. § 558.016 (1979, 1986 Cum.Supp.), 569.170 (1979) |
| Montana | Mont.Code Ann. 46–18–501 (1985) |
| Nebraska | Neb.Rev.Stat. § 29–2221 (1985) |
| Nevada | Nev.Rev.Stat. § 207.010 (1986) |
| New Hampshire | N.H.Rev.Stat.Ann. § 651:6 (1974, 1983 Cum.Supp.) |
| New Jersey | N.J.Rev.Stat. §§ 2C:43–7, 2C:18–3 (1982) |
| New Mexico | N.M.Stat.Ann. § 31–81–17 (1978) |
| New York | N.Y.Penal Law §§ 70.06, 140.25 (1984) |
| North Carolina | N.C.Gen.Stat. § 14–7.6 (1981 Repl.Vol.) |
| North Dakota | N.D. Cent. Code § 12.1–32–09 (1985) |
| Ohio | Ohio Rev.Code Ann. § 2929.12 (1982, 1985 Cum.Supp.) |
| Oklahoma | Okla.Stat. tit. 21 § 51 (1983, 1985 Cum.Supp.) |
| Oregon | Or.Rev.Stat. § 161.725 (1985) |
| Pennsylvania | Pa.Stat.Ann. tit. 42 § 9714 (1982) |
| Rhode Island | R.I. Gen.Laws § 12–19–21 (1981) |
| South Carolina | S.C. Code Ann. § 17–25–45 (1985) |
| South Dakota | S.D. Codified Laws Ann. § 22–7–8 (1979 Rev., 1986 Cum.Supp.) |
| Tennessee | Tenn.Code Ann. § 39–1–801 (1982 Repl.Vol.) |
| Texas | Tex.Penal Code Ann. § 12.42 (1974, 1986 Cum.Supp.) |
| Utah | Utah Code Ann. § 76–8–1001 (1978) |

| | |
|---|---|
| Vermont | Vt.Stat.Ann. tit. 13, § 11 (1974) |
| Virginia | No Habitual Offender Statute |
| Washington | Wash.Rev.Code Ann. §§ 9.92.090, 9.92.900 (1985 Rev.) |
| West Virginia | W.Va. Code § 61–11–18 (1984) |
| Wisconsin | Wis.Stat. § 939.62 (1982) |
| Wyoming | Wyo.Stat. § 6–10–201 (1986) |