(Decided 26th January, 1883.)

## CHARLES FOOTE *vs.* STATE OF MARYLAND.

*Act of 1852, ch. 63—Constitutionality of an Act of Assembly—Demurrer to Indictment—Eighth Amendment to the Constitution of the United States—Act of 1882, ch. 120—Whipping as a punishment—The word "Brutally," sufficiently Descriptive of the offence—Jury to determine the Grade of the offence—Act of 1882, ch. 120, not Invalid as applying to a Special class—Mode and manner of inflicting the Punishment imposed by the Act of 1882, ch. 120—Act of 1882, ch. 120, in accord with the requirement of sec. 29, of Art. 3, of the Constitution.*

Since the Act of 1852, ch. 63, the usual, and only proper mode of testing the constitutionality of an Act of Assembly under which a party is indicted, is by demurrer to the indictment.

The eighth amendment to the Constitution of the United States, which provides that—" excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted "—is not a restraint upon the legislative power of the States, but a restriction only upon the legislative power of the United States; and therefore does not apply to the Act of 1882, ch. 120, which imposes the penalty of whipping upon persons found guilty of wife-beating.

Whipping is not a "cruel or unusual punishment" within the prohibition of the Bill of Rights.

The word " brutally " employed in the Act of 1882, ch. 120, is not uncertain or indefinite as descriptive of the offence, and is as easily understood and applied as the words " unjustly," " maliciously," &c., well known descriptive averments in indictments.

A party may be indicted under the Act of 1882, ch. 120, for " brutally " beating his wife, or he may be indicted for the common law offence; or the indictment may embrace two counts, one charging the statutory, and the other the common law offence; and the jury before whom the case is tried, must determine whether or not the circumstances attending the assault will warrant a conviction on the statutory count.

The Act of 1882, ch. 120, is not invalid because it applies to a special class of the community. The Legislature has the undoubted right to punish a man more severely for beating his wife, than for beating another.

The mode and manner of inflicting the punishment imposed by the Act of 1882, ch. 120, are sufficiently regulated by the words of the statute. The officer of the law in administering the punishment may properly adopt the means ordinarily used for such purpose. The Act makes whipping a punishment, and not a sham.

The Act of 1882, ch. 120, entitled, " An Act to inflict corporal punishment upon persons found guilty of wife-beating," embraces but one subject, and that is sufficiently described in the title.

APPEAL, as upon Writ of Error, from the Criminal Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was submitted to MILLER, STONE, ALVEY, ROBINSON, IRVING, and RITCHIE, J.

Foote *vs.* State.

*T. Kell Bradford,* and *Lewis Mayer,* for the appellant.

*Charles J. M. Gwinn, Attorney-General,* for the appellee.

STONE, J., delivered the opinion of the Court.

This case comes before us upon a writ of error from the Criminal Court of Baltimore City.

The plaintiff in error, Foote, was indicted in that Court under the Act of 1882, ch. 120, for brutally assaulting and beating his wife, found guilty and sentenced to imprisonment in jail for sixty days, and to be whipped seven lashes by the sheriff. He assigns for causes of error that the Act of 1882, chap. 120, is unconstitutional (in so far as it imposes the penalty of whipping) for the following reasons:

1st. That it is in contravention of the 16th and 25th Articles of the Bill of Rights of Maryland, and the 8th Amendment to the Constitution of the United States.

2nd. That it is uncertain and indefinite as to the offence.

3rd. That it is partial in its provisions, and intended for a special class of the community.

4th. That it is uncertain and indefinite as to the mode and manner of the infliction of the punishment of whipping.

5th. That the title does not properly describe the subject of the law.

Since the Act of 1852, chap. 63, the usual and only proper mode of testing the constitutionality of an Act of Assembly under which a party is indicted, is by demurrer to the indictment. But as in this case the Attorney-General has, in his brief, discussed the questions raised in the record, and expressed the opinion that these questions ought to be settled, we will proceed to examine them. Before we do so, however, we may say—

That this Court has uniformly held, that the Acts of the Legislature are always presumed to be constitutional, and

to justify them in declaring an Act void by reason of its unconstitutionality, they must be satisfied that it is in direct and clear conflict with the Constitution. They have no power to declare it void, because it conflicts with their opinion of expediency or justice. The remedy for legislation of that character is with the Legislature and not with the Courts.

The eighth amendment to the Constitution of the United States is not a restraint upon, and does not apply to, the Legislature of a State, but only to the National Legislature,. and, therefore, has no application to this case. *Pervear vs. Commonwealth,* 5 *Wallace,* 479.

The terms "cruel and unusual pains and penalties," and "cruel or unusual punishment," have been incorporated in each successive Constitution in this State from 1776 to the present time. That the punishment of whipping was not considered a "cruel or unusual punishment," and, therefore, coming within the prohibition of the Constitution, is most conclusively shown by the fact that the punishment by whipping was recognized by the statute law of the State under all these Constitutions, certainly down to the Constitution of 1864, and then only obliterated from the statute book, not by direct repeal, but by force of the constitutional amendment abolishing slavery.

It is true, that under some of the later Constitutions the punishment by the laws was confined to negroes and slaves, but the words "cruel or unusual" covered *all* cases. of punishment, and were as applicable to negroes and slaves as to whites. At the time of the adoption of the Bill of Rights in 1776, and for a long time before, and for a long time thereafter, the punishment of whipping for certain offences was imposed upon whites and blacks alike. We are not dealing with the expediency, justice, or efficacy of this punishment, but only with the true intepretation of the terms of the Constitution under which we live. When, therefore, we find that the people who made this.

Constitution, and who must be presumed to understand the meaning of the terms they use, have, from the time these words were first incorporated, in 1776 down to 1882, a period of more than a hundred years, through the several successive Legislatures, uniformly held that the punishment of whipping was not included in that class which the Constitution forbids, we should violate the plainest principles of the construction of statutes now to decide otherwise. We have not only the contemporaneous, but the continued, exposition of the meaning of the words in this long course of legislative construction, upheld and continually enforced by the Courts, in the imposition of the punishment.

If authority be wanted for the position we have taken, that whipping is not the cruel or unusual punishment forbidden by the Bill of Rights, it may be found in the decisions of some of the States as well as of the Federal Courts. 1 *Bishop on Criminal Law, sec.* 947 *and note;* 2 *Curtis' C. C. Rep.* 194.

The next objection urged against the Act is, that it is uncertain and indefinite in the description of the offence.

The word "brutally" used in the Act is as easily understood and applied as many words that are used as descriptive averments in indictments; as, for example, the words "unjustly," "maliciously," &c.

The effect of the Act of 1882, chapter 120, is to divide the offence of assaults on the wife into two sorts—such as are attended with such circumstances of aggravation that they may be termed "brutal," and such as cannot properly come under that head. A party may be indicted under the statute for "brutally" beating his wife, or he may be indicted for the common law offence; or, as was the case here, there may be two counts in the indictment, one count charging the statutory, and the other the common law offence. The jury before whom the case is tried must determine whether or not the circumstances attend-

ing the assault are such as to warrant a conviction on the statutory count. The act of 1809 divided the crime of murder into two kinds and with different punishments. Wilful, deliberate and premeditated murder is murder in the first degree, while other kinds of murder belong to the second degree. Every jury before whom a party indicted for murder is tried, has to determine whether the facts proved do or do not amount to wilful, deliberate and premeditated murder, such as is contemplated by the Act of 1809. There is no more difficulty in determining that the character of the assault was " brutal " than in determining that the killing was wilful, deliberate and premeditated. The term brutal is now definite enough to the common apprehension of mankind, and any attempt to give it a more definite meaning upon paper would likely result in failure.

That the Act is partial and intended to apply to a special class, as alleged in the third reason of the plaintiff in error, is literally true. But the same may be said of all criminal laws. They are all made for the special class they were intended to reach. If the objection means that the Act is invalid because it only applies to husbands and wives, it is equally untenable. The law-making power has the undoubted right (under proper constitutional restrictions) to protect one special class of a community against another special class, when, in their judgment, they deem the well-being and happiness of the community require it. For the prevention of crime, which is the true end of all punishment, the law-giver may properly consider the frequent and easy opportunities of committing the crime and the difficulty of guarding against it, and may grade his punishment accordingly. Thus, for example, in England a servant who robs his master is punished more severely than if he robbed a stranger ; and in this State he who by authority collects and afterwards appropriates to his own use the public money, is sent to the

penitentiary, while if he does the same thing with the money of an individual, he is not punished criminally at all. This principle applies to this Act, and the Legislature has the undoubted right to punish a man more severely for beating his wife than for beating another. It is a matter in their discretion.

The fourth objection is that the Act is indefinite as to the manner of inflicting the stripes. The Act itself prescribes who shall inflict the punishment, where it shall be inflicted and the number of lashes. The officer of the law, in administering the punishment, may properly adopt the means ordinarily used for such purpose. The Act makes whipping a punishment and not a sham.

And, lastly, it is objected that the title of the Act does not sufficiently describe the subject of the law. The Act only embraces one subject, to wit: the infliction of the corporal punishment of whipping upon persons found guilty of wife beating, and that subject is clearly enunciated in the title.

*Judgment affirmed.*

(Decided 26th January, 1883.)