546 A.2d 1028

**Kevin Claude MINOR**

v.

**STATE of Maryland.**

**No. 98, Sept. Term, 1986.**

Court of Appeals of Maryland.

Sept. 13, 1988.

Michael R. Braudes, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Mary Ellen Barbera, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., on the brief), Baltimore, for appellee.

Argued before ELDRIDGE, COLE, RODOWSKY,* COUCH, McAULIFFE and ADKINS, JJ., and CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals of Maryland (retired), Specially Assigned.

COLE, Judge.

At issue in this case is the constitutionality of Kevin Claude Minor's sentence of twenty-five years in prison without the possibility of parole under Maryland's habitual

---

* Couch, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Art. IV, Sec. 3A, he also participated in the decision and adoption of this opinion.

criminal statute. Minor was sentenced pursuant to Md. Code (1957, 1982 Repl.Vol., 1987 Cum.Supp.) Art. 27, § 643B(c), which provides:

> **Third conviction of crime of violence.**—Any person who (1) has been convicted on two separate occasions of a crime of violence where the convictions do not arise from a single incident, and (2) has served at least one term of confinement in a correctional institution as a result of a conviction of a crime of violence, shall be sentenced, on being convicted a third time of a crime of violence, to imprisonment for the term allowed by law, but, in any event, not less than 25 years. Neither the sentence nor any part of it may be suspended, and the person shall not be eligible for parole except in accordance with the provisions of Article 31B, § 11. A separate occasion shall be considered one in which the second or succeeding offense is committed after there has been a charging document filed for the preceding occasion.

Minor's current conviction for daytime housebreaking represents his fourth conviction for a "crime of violence" in the last ten years.[1] The sentencing judge found that Minor previously had been convicted of burglary and two separate acts of housebreaking. In addition, Minor had served at least one term of confinement in the State prison system.

---

1. Art. 27, § 643B(a) provides:

Crime of Violence.—As used in this section, the term "crime of violence" means abduction; arson; burglary; daytime housebreaking under § 30(b) of this article; kidnapping; manslaughter, except involuntary manslaughter; mayhem and maiming under §§ 384, 385, and 386 of this article; murder; rape; robbery; robbery with a deadly weapon; sexual offense in the first degree; sexual offense in the second degree; use of a handgun in the commission of a felony or other crime of violence; an attempt to commit any of the aforesaid offenses; assault with intent to murder; assault with intent to rape; assault with intent to rob; assault with intent to commit a sexual offense in the first degree; and assault with intent to commit a sexual offense in the second degree.

The term "correctional institution" includes Patuxent Institution and a local or regional jail or detention center.

Minor appealed his sentence to the Court of Special Appeals, and, that court affirmed the lower court in an unreported per curiam opinion. We subsequently granted certiorari to address the important question presented.

We discussed the unique qualities of the Maryland habitual offender statute in *Montone v. State,* 308 Md. 599, 521 A.2d 720 (1987). Although in that case we were commenting on the operation of § 643B(b), our remarks are equally applicable to § 643B(c). We said:

> The Maryland statute requires more than merely "previous" convictions; it requires *separate* convictions. Moreover, the statute's scope is narrowed by the fact that it requires not only that an individual shall have received separate convictions, but that he shall have been sentenced to, and shall have *actually served,* [a term] of confinement under the jurisdiction of the correctional system.

*Id.* at 606, 521 A.2d at 723. (Emphasis supplied).

Section 643B(c) is designed to allow the prosecutor to seek an enhanced punishment against individuals who have demonstrated violent propensities on three distinct occasions. The penological objectives behind the extended incarceration of these individuals are to protect our citizens from violent crime and to expose these criminals to a prolonged rehabilitative process. *See Hawkins v. State,* 302 Md. 143, 148, 486 A.2d 179, 182 (1985).

Minor argues that his sentence of twenty-five years without parole is cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution[2] and Articles 16 and 25 of the Maryland Declaration of Rights.[3] In particular, Minor asserts that he has never

---

**2.** U.S. Constitution Amend. VIII provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

**3.** Article 16 of the Maryland Declaration of Rights provides as follows:
That sanguinary laws ought to be avoided as far as it is consistent with the safety of the State; and no Law to inflict cruel and unusual

threatened nor harmed any person during the perpetration of any of his past crimes. Thus, Minor reasons that the legislature has erred in rigidly classifying housebreaking as a crime of violence for purposes of the enhanced punishment statute. Minor maintains that a sentence of twenty-five years without parole is disproportionate in light of all the circumstances and should be vacated pursuant to the dictates of *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). In *Helm*, the Supreme Court vacated a life sentence without the possibility of parole imposed under the South Dakota habitual criminal statute. The Supreme Court concluded that the sentence was significantly disproportionate to the defendant's crime of uttering a "no account" check for $100.00.

The State contends that a *Helm* proportionality review of Minor's sentence is unnecessary and inappropriate in light of the Supreme Court's ruling in *Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980). In *Rummel*, the defendant was convicted of obtaining $120.75 by false pretenses, his third felony, and was given a life sentence with the possibility of parole under the Texas habitual criminal statute. The Supreme Court decided that this sentence was not cruel and unusual and rejected Rummel's request for a proportionality review. In the alternative, the State contends that Minor's sentence would be upheld under the *Helm* proportionality analysis.

Although Minor's sentence is similar in some respects to both of the sentences reviewed in *Rummel* and *Helm*, we conclude that the underlying facts in this case are more analogous to those presented in *Rummel*. Accordingly, an

---

pains and penalties ought to be made in any case, or at any time, hereafter.

Article 25 of the Maryland Declaration of Rights provides as follows:

That excessive bail ought not to be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted, by the Courts of Law.

extensive proportionality review under *Helm* is unnecessary. We explain.

In *Rummel,* the Supreme Court stated that "the Eighth Amendment prohibits imposition of a sentence that is grossly disproportionate to the severity of the crime." *Id.* at 271, 100 S.Ct. at 1138 (Citations omitted). However, "[o]utside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." *Id.* at 272, 100 S.Ct. at 1138.

The Supreme Court noted that before Rummel could receive a life sentence under the Texas statute, the State had to prove that Rummel previously had been convicted of two *separate* felonies and had actually served a period of incarceration for each of those offenses. *Id.* at 278 nn. 15, 16, 100 S.Ct. at 1141 nn. 15, 16. These procedural requirements are very similar to those of the Maryland statute in question. The Texas habitual criminal statute was found to promote the State's legitimate interest "in dealing in a harsher manner with those who by repeated criminal acts have shown that they are simply incapable of conforming to the norms of society as established by its criminal law." *Id.* at 276, 100 S.Ct. at 1140. In upholding the sentence, the Supreme Court indicated that the length of sentences in recidivist statutes are largely within the discretion of the punishing jurisdiction. *Id.* at 285, 100 S.Ct. at 1145.

Following *Rummel,* the Supreme Court upheld a forty year sentence imposed under Virginia law for the sale of nine ounces of marijuana. *Hutto v. Davis,* 454 U.S. 370, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982) (per curiam). The Supreme Court reiterated that the length of legislatively mandated prison terms should rarely be subjected to judicial review. *Id.* at 374, 102 S.Ct. at 705.

The following year the Supreme Court decided the *Helm* case. In overturning the defendant's life sentence without the possibility of parole, the Supreme Court stated that "no penalty is *per se* constitutional ... a single day in prison may be unconstitutional in some circumstances." *Helm* 463

U.S. at 290, 103 S.Ct. at 3009–10. The Supreme Court, however, did not overrule *Rummel*. It made unmistakably clear that

> [c]ontrary to the dissent's suggestions ... we do not adopt or imply approval of a general rule of appellate review of sentences. Absent specific authority, it is not the role of an appellate court to substitute its judgment for that of the sentencing court as to the appropriateness of a particular sentence; rather, in applying the Eighth Amendment the appellate court decides only whether the sentence under review is within constitutional limits. In view of the substantial deference that must be accorded legislatures and sentencing courts, a reviewing court rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate.

*Id.* at 290 n. 16, 103 S.Ct. at 3009–10 n. 16.

The Supreme Court distinguished the *Rummel* holding on the grounds that the defendant in that case would likely have been eligible for parole within a reasonable amount of time (twelve years), while Helm's sentence, life without parole, required that he spend the rest of his days in the state penitentiary. *Id.* The Supreme Court implied that its holding in *Helm* was limited to the particular facts of that case.[4]

This Court recently had the opportunity to consider the constitutionality of a sentence imposed under Art. 27, § 643B(b) which subjects criminals who have served three separate prison terms and have been convicted of a fourth crime of violence to a mandatory life sentence without the possibility of parole. *See State v. Davis*, 310 Md. 611, 530 A.2d 1223 (1987). In *Davis*, the defendant was convicted of

---

**4.** "We raise no question as to the general validity of sentences without possibility of parole. The only issue before us is whether, in the circumstances of this case and in light of the constitutional principle of proportionality, the sentence imposed on this respondent violates the Eighth Amendment." *Helm*, 463 U.S. at 297 n. 24, 103 S.Ct. at 3013 n. 24.

daytime housebreaking. This conviction, combined with a long list of prior burglary and daytime housebreaking convictions resulted in a mandatory sentence of life without benefit of parole. Davis argued that his sentence was cruel and unusual in violation of the Eighth Amendment and that *Helm* required that the sentence be vacated.

This Court held that *Helm* was not factually controlling in *Davis*. In particular, we noted that while Helm's crimes were "relatively minor," Davis's crimes were classified as "crimes of violence" under § 643B(a). In light of the seriousness of the crime of daytime housebreaking, the stringent requirements of § 643B(b), and the principle espoused in *Helm* that reviewing courts should accord substantial deference to legislative sentencing schemes, we concluded that an extended proportionality analysis was unnecessary in *Davis*. *Id.* at 629, 530 A.2d at 1233. However, as an alternative in *Davis*, we applied the objective analysis outlined in *Helm* and concluded that Davis's sentence was constitutionally sound. *See also Terrebonne v. Butler*, 820 F.2d 156 (5th Cir.1987); *Seritt v. Alabama*, 731 F.2d 728 (11th Cir.), *cert. denied*, 469 U.S. 1062, 105 S.Ct. 545, 83 L.Ed.2d 433 (1984); *People v. Fernandez*, 427 Mich. 321, 398 N.W.2d 311 (1986).

■ Our discussion in *Davis* is pertinent to our analysis in this case in another respect. Specifically, Davis, like Minor, argued that daytime housebreaking is a minor, nonviolent offense. We rejected that argument stating:

> The General Assembly has classified daytime housebreaking in Maryland with offenses such as murder, manslaughter, rape, and robbery with a deadly weapon in the class of "crimes of violence" under § 643B. Although an assault and battery is not an element of daytime housebreaking, the legislature recognized in § 643B the substantial potential for violence inherent in acts of daytime housebreaking. Even if the housebreaker seeks to avoid encountering another person in the dwelling, the housebreaker may be mistaken in believing the dwelling is temporarily unoccupied or the housebreak-

er may be surprised by the return of an occupant. We need not look beyond our recent cases for examples of crimes which started as housebreakings and which ended as murders for which the death penalty was imposed. *See Johnson v. State,* 303 Md. 487, 495 A.2d 1 (1985), *cert. denied,* 474 U.S. 1093, 106 S.Ct. 868, 88 L.Ed.2d 907 (1986); *Colvin v. State,* 299 Md. 88, 472 A.2d 953 (1984). *Davis,* 310 Md. at 629, 530 A.2d at 1233. We reaffirm this position. The legislature recognized the potential and likelihood of violence in certain kinds of criminal behavior. As we see it, this recognition obviates the necessity for the State to demonstrate that there was actual violence in the commission of a predicate crime before enhanced punishment can be imposed under the statute. However, we hasten to make clear that we do not suggest that under constitutional review the facts of the predicate crimes are immaterial or must be ignored. We simply conclude that under the circumstances of this case no constitutional review is in order. Thus, the legislative determination that housebreaking is a violent crime will not be disturbed.

■ In the case *sub judice,* the Court of Special Appeals summarily upheld Minor's sentence in accord with its previous decision in *Bryan v. State,* 63 Md.App. 210, 492 A.2d 644, *cert. denied,* 304 Md. 296, 498 A.2d 1183 (1985). In *Bryan,* the intermediate appellate court was faced with the precise issue which this Court decides today.

The defendant, Bryan, was sentenced to twenty-five years without the possibility of parole pursuant to § 643B(c) following a third conviction for a crime of violence. Bryan argued that a *Helm* proportionality review was required. The court rejected this contention and found *Rummel* to be controlling.

The intermediate appellate court supported its position by examining the differences between § 643B(c) and the South Dakota habitual criminal provisions which the Supreme Court dealt with in *Helm.* The court focused on the potential for serious harm associated with the crimes of violence

listed in § 643B(a) and the lengthy prison terms which even a first offender would face upon conviction. The South Dakota statute, on the other hand, applied to felonies which would not necessarily involve violence or risk of harm. Further, the court emphasized that the Maryland statute requires imprisonment for a *term of years* without parole. Thus, the "[a]ppellant has some hope of an eventual release from prison." *Id.* at 219, 492 A.2d at 648. In comparison, the South Dakota statute mandated a *life* sentence without parole. Finally, the court relied on numerous decisions of other jurisdictions upholding mandatory sentences under similar habitual criminal statutes. We find these cases to be instructive.

In *Moreno v. Estelle,* 717 F.2d 171 (5th Cir.1983), *cert. denied,* 466 U.S. 975, 104 S.Ct. 2353, 80 L.Ed.2d 826 (1984), the defendant, a repeat offender, was given a life sentence with eligibility for parole after twenty years. Moreno had two previous convictions for non-violent felonies while his third conviction was for aggravated assault. The appellate court found the facts of the case to be substantially similar to the facts in *Rummel* and affirmed the validity of the sentence without engaging in a *Helm* analysis.

The United States Court of Appeals for the Fourth Circuit also upheld a lengthy sentence for a term of years without an extended *Helm* analysis. In *United States v. Rhodes,* 779 F.2d 1019 (4th Cir.1985), *cert. denied,* 476 U.S. 1182, 106 S.Ct. 2916, 91 L.Ed.2d 545 (1986), a sentence of seventy-five years without parole was upheld after a simple matching of the facts of that case to the *Helm* principles. The court held that *Helm* "requires an extensive proportionality analysis only in those cases involving life sentences without parole." *Id.* at 1028. *See also Chandler v. Jones,* 813 F.2d 773 (6th Cir.1987) (habitual criminal's life sentence with eligibility for parole after thirty years was upheld as factually similar to *Rummel; Helm* analysis provided in the alternative); *United States v. Rosenberg,* 806 F.2d 1169 (3rd Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 2465, 95 L.Ed.2d 873 (1986) (defendants' sentences of fifty-eight

years were upheld after an abbreviated proportionality review in accord with *Rhodes* and *Moreno* ); *Stevens v. Armontrout,* 787 F.2d 1282 (8th Cir.1986) (two hundred year sentence with eligibility for parole after serving twelve years upheld as within statutory limits and distinguishable from *Helm* ); *United States v. Stead,* 740 F.2d 657 (8th Cir.), *cert. denied,* 469 U.S. 1090, 105 S.Ct. 600, 83 L.Ed.2d 709 (1984) (twenty year sentence upheld; *Helm* is distinguished on grounds that sentence in question is for a term of years and parole is available); *United States v. Zylstra,* 713 F.2d 1332 (7th Cir.), *cert. denied,* 464 U.S. 965, 104 S.Ct. 403, 78 L.Ed.2d 344 (1983) (sentence of two hundred and ten years with parole eligibility after serving ten years is upheld without *Helm* analysis); *Arizona v. Noriega,* 142 Ariz. 474, 690 P.2d 775 (1984) (life sentence with possibility of parole after serving twenty-five years upheld without extended *Helm* analysis); *Thomas v. State,* 471 N.E.2d 681 (Ind.1984) (sentence for rape of forty years with eligibility for parole after twenty years upheld without extended *Helm* analysis); *Seely v. State,* 451 So.2d 213 (Miss.1984) (sentence of fifteen years without possibility of parole for third non-violent felony upheld under *Rummel* ); *State v. O'Connor,* 408 N.W.2d 754 (S.D.1987) (sentence of three concurrent fifty year terms for habitual offender upheld without extended *Helm* analysis). *But cf. United States v. Darby,* 744 F.2d 1508 (11th Cir.1984), *cert. denied,* 471 U.S. 1100, 105 S.Ct. 2322, 85 L.Ed.2d 841 (1985) (applying extended *Helm* analysis to sixty year sentence with parole); *Whitmore v. Maggio,* 742 F.2d 230 (5th Cir.1984) (sentences of fifty and seventy-five years without benefit of parole must receive *Helm* proportionality analysis).

We conclude that an extended *Helm* proportionality analysis is not mandatory under these facts. In light of the seriousness of Minor's past and present criminal conduct, deference due the legislature in regard to sentencing directives, and the unique function and particular requirements for enhanced punishment under § 643B(c), we hold

that Minor's sentence is within constitutional limits. *Accord State v. Davis, supra.*

■ However, even if a proportionality analysis is required, we believe that the sentence is valid. The *Helm* court outlined objective criteria to be examined in cases requiring proportionality review. The sentencing court should consider: "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." *Helm*, 463 U.S. at 292, 103 S.Ct. at 3011.

As to the first criterion, we recognized in *Davis, supra,* that the Maryland General Assembly views daytime housebreaking as a serious offense due to the potential for violence which accompanies such illegal conduct. The fact that physical violence is absent is not determinative. Furthermore, although a sentence of twenty-five years without parole may be considered harsh for a first offense of daytime housebreaking, we conclude that the sentence is appropriate in this case because Minor's criminal history reveals that he is a professional criminal in need of extended rehabilitation.

The second *Helm* criterion compares the sentence in question with sentences for other crimes in the jurisdiction. As noted in *Davis*, life without parole is the most severe non-capital punishment in Maryland law, and is appropriate when a defendant has *four* separate convictions for a crime of violence and has served three separate terms of confinement in a correctional institution. The sentence here, twenty-five years without parole, is mandatory if the defendant has committed a *third* separate crime of violence under § 643B(c). Since the sentences to be imposed under subsections (b) and (c) apply to all of the crimes of violence listed in § 643B(a) there is little question that the sentences are proportionate in relation to sentences for similar crimes. On a more fundamental level, the sentences for first offenses of these crimes of violence provide for lengthy

prison terms ranging from a minimum of ten years for daytime housebreaking to life for first degree rape. *See Bryan*, 63 Md.App. at 217–18, 492 A.2d at 647–48. Accordingly, the sentence in question is proportionate to the sentences imposed for other crimes in Maryland.

Finally, *Helm* requires that we compare the sentence imposed under the Maryland habitual criminal statute with the sentences imposed for the commission of the same crime in other jurisdictions. In *Davis*, 310 Md. at 637, 530 A.2d at 1236, we commented that if "four to six states authorize comparable sentencing, we would have no hesitancy in finding that the third *Helm* criterion indicates that Davis's sentence is constitutional." However, even if this State's sentence was found to be the most severe of the several states, that fact alone would not necessarily taint the validity of the sentence. *Rummel*, 445 U.S. at 281–82, 100 S.Ct. at 1143. Barring strict uniformity, one state generally will have the distinction of enforcing the most severe punishment; to strike down a statute solely on these grounds is absurd.

As indicated in *Davis*, a life sentence without the benefit of parole can be imposed for a third housebreaking conviction in Delaware.[5] The same third conviction would expose the defendant to a life sentence in the District of Columbia, Idaho, New York, South Carolina, and West Virginia.[6] A life sentence can be imposed in Utah[7] following a second conviction for housebreaking, while the same life sentence

---

5. Del.Code Ann. tit. 11 §§ 825, 4214 (1979 Repl.Vol. & 1986 Cum. Supp.).

6. D.C.Code Ann. §§ 22–1801(b), 22–104(a) (1981); Idaho Code §§ 18–1401, 18–1402, 19–2514 (1987); N.Y.Penal Laws §§ 140.20, 70.10 (McKinney 1975 & 1988 Cum.Supp.); S.C.Code Ann. §§ 16–11–312, 17–25–45 (1976, 1987 Cum.Supp.) (without parole); W.Va.Code §§ 61–3–11, 61–11–18 (1966, 1984 Repl.Vol.).

7. Utah Code Ann. §§ 76–6–202, 76–8–1001 (1953, 1978 Repl.Vol., 1987 Cum.Supp.).

is permitted in Texas [8] for a first offense of housebreaking. Habitual housebreakers also face lengthy terms of imprisonment in many states.[9]

As the Maryland sentence is clearly within the general range of sentences imposed in other jurisdictions for the same crime, we conclude that Minor's sentence is not unconstitutionally disproportionate.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; APPELLANT TO PAY THE COSTS.

ELDRIDGE, Judge, concurring:

I concur in the Court's judgment but not in its opinion.

The majority, following the lead of some other courts,[1] approaches sentence proportionality review under the Eighth Amendment as if the controlling principles are those set forth in *Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980), and *Hutto v. Davis*, 454 U.S. 370, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982), and as if *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), is of extremely limited applicability. The majority seems to view

---

**8.** Texas Penal Code Ann. § 30.02, 12.32 (Vernon 1974 & 1988 Cum. Supp.).

**9.** Ala.Code §§ 13A–5–9(b), 13A–7–7, 13A–5–6 (1975, 1982 Repl.Vol., 1987 Cum.Supp.) (10 years to 99 years); Ark.Stat.Ann. §§ 5–4–501(a)(3), 5–39–201 (1987) (10 years to 30 years); Colo.Rev.Stat. §§ 16–13–101(1), 18–4–202.1(2); 18–4–203 (1986 Repl.Vol., 1987 Cum. Supp.) (25 years to 50 years); Fla.Stat.Ann. §§ 775.084(4)(a), 810.02 (1976, 1988 Cum.Supp.) (up to 30 years); Ind.Code Ann. §§ 35–50–2–8(e), 35–43–2–1 (Burns 1985 Repl.Vol., 1987 Cum.Supp.) (up to 35 years); La.Rev.Stat.Ann. §§ 15:529.1(A)(2)(a), 14:62 (1986, 1988 Cum. Supp.) (6 years to 24 years); Mich.Comp.Laws §§ 769.11(1)(a), 750.-110 (1982, 1988 Cum.Supp.) (up to 30 years); Mont.Code Ann. §§ 46–18–501, 46–18–502(2), 45–6–204 (1987) (10 years to 100 years); S.D.Codified Laws Ann. §§ 22–6–1(4), 22–7–7, 22–32–3 (1988 Rev. ed.) (25 years); Nev.Rev.Stat.Ann. §§ 207.010(1), 205.060(1) (1986, 1987 Cum. Supp.) (10 years to 20 years).

**1.** *See, e.g., United States v. Rhodes*, 779 F.2d 1019, 1027–1029 (4th Cir.1985), *cert. denied*, 476 U.S. 1182, 106 S.Ct. 2916, 91 L.Ed.2d 545 (1986); *Moreno v. Estelle*, 717 F.2d 171, 179–181 (5th Cir.1983), *cert. denied*, 466 U.S. 975, 104 S.Ct. 2353, 80 L.Ed.2d 826 (1984).

all cases as falling within either of two well-defined categories. The first of the majority's categories appears to encompass the vast majority of cases as to which no proportionality analysis under *Solem v. Helm* is appropriate and *Rummel v. Estelle* is controlling. The second category embraces a few cases governed by the principles of *Solem v. Helm,* and subjected to an "extended analysis" based on "three criteria." I disagree entirely with this approach.

Whether or not *Solem v. Helm* in effect overruled *Rummel v. Estelle,* as argued by Judge Adkins in his dissent, is a matter which need not concern us very much until we are faced with a case which is not substantially distinguishable from *Rummel.* Nevertheless, largely for the reasons set out in Judge Adkins's dissent, I believe that the controlling principles under the Eighth Amendment are those contained in *Solem* and not *Rummel.*

Furthermore, I do not believe that the Supreme Court's opinions require that we classify all criminal sentences into two categories, one involving no proportionality analysis and the other involving a particular form of extended proportionality analysis utilizing three, and only three, criteria. As Justice Powell indicated for the Court in *Solem,* all criminal sentences are subject to Eighth Amendment proportionality review but only rarely will an extensive review be required. *Solem v. Helm, supra,* 463 U.S. at 289–290, 103 S.Ct. at 3009–3010. Common sense and experience teach that, in a vast majority of cases, an appellate court, faced with an Eighth Amendment contention, can quickly reach the conclusion that the sentence is not constitutionally disproportionate to the crime. Beyond those cases, the degree of review required may vary from case to case; one case may require much more extensive analysis than another.

Moreover, proportionality review need not always consider, and always be limited to, the three factors discussed in Part III A of Justice Powell's *Solem* opinion. It is noteworthy that the second and third factors were set forth as mere

suggestions or possibilities.[2] In some cases, an examination into the sentences imposed in other jurisdictions may be unnecessary and not very fruitful; in other cases, it may be quite helpful. Considerations apart from the three factors mentioned in Part III A of the *Solem* opinion are also pertinent, including deference to the legislative judgment, the particular facts concerning the commission of the crime, information in a pre-sentence investigation report, etc. I think that it would be unfortunate if Eighth Amendment proportionality review of sentences were frozen in the form of a "three criteria" review.

Applying the principles of *Solem v. Helm* to the instant case, however, leads me to the conclusion that the defendant's sentence is not constitutionally disproportionate to the crime. Breaking into a dwelling house, whether done in the day or night, is a most heinous offense. Not only has the Legislature classified it as a crime of violence, but it is in fact a crime of violence against the occupants of the dwelling. Few rights are more precious to Americans than the right "to be secure in their ... houses." [3] I am in complete agreement with the discussion in *State v. Davis*, 310 Md. 611, 628–629, 530 A.2d 1223 (1987), concerning the gravity of this offense under Maryland law. In addition, the actual facts concerning the defendant's several offenses present no circumstances which render the present sentence disproportionate. The defendant Minor is a career burglar who has repeatedly embarked upon a course of conduct endangering persons in their homes.

Consequently I agree with the Court that, under *Solem v. Helm*, the defendant's sentence violated neither the Eighth

---

**2.** The Court thus stated (463 U.S. at 291–292, 103 S.Ct. at 3010, emphasis added):

"Second, *it may be helpful* to compare the sentences imposed on other criminals in the same jurisdiction. * * *

"Third, *courts may find it useful* to compare the sentences imposed for commission of the same crime in other jurisdictions."

**3.** United States Constitution, Amendment IV.

Amendment to the United States Constitution nor Articles 16 and 25 of the Maryland Declaration of Rights.[4]

ADKINS, Judge, dissenting.

The Circuit Court for Prince George's County sentenced Kevin Claude Minor to 25 years in prison without the possibility of parole. The sentence was imposed pursuant to the mandatory provisions of Md.Code (1957, 1982 Repl. Vol., 1987 Cum.Supp.) Art. 27, § 643B(c).[1]

This Court now holds that proportionality review of that sentence is not required by the federal and state constitutional prohibitions against the imposition of cruel and unusual punishment. In the alternative, the Court holds that in any event Minor's sentence is not constitutionally disproportionate. I disagree with both holdings and respectfully dissent.

## I.

The facts that led to Minor's sentence may be briefly recounted. In September 1985, Minor, then 26½ years old, was convicted of housebreaking with intent to steal. He had previously been convicted of burglary and of two

---

**4.** The majority opinion does not separately discuss the defendant's reliance upon Articles 16 and 25 of the Maryland Declaration of Rights. Thus, the majority apparently views the Maryland constitutional provisions as being *in pari materia* with the Eighth Amendment. This approach, with which I agree, seems to be reflected in many of our prior cases. *See, e.g., Tichnell v. State,* 287 Md. 695, 720–729, 415 A.2d 830 (1980); *Delnegro v. State,* 198 Md. 80, 88–89, 81 A.2d 241 (1951), *Lanasa v. State,* 109 Md. 602, 611–612, 71 A. 1058 (1909); *Foote v. State,* 59 Md. 264, 268 (1883). *See also Mitchell v. State,* 82 Md. 527, 532–534, 34 A. 246 (1896).

**1.** Any person who (1) has been convicted on two separate occasions of a crime of violence where the convictions do not arise from a single incident, and (2) has served at least one term of confinement in a correctional institution as a result of a conviction of a crime of violence, shall be sentenced, on being convicted a third time of a crime of violence, to imprisonment for ... not less than 25 years. Neither the sentence nor any part of it may be suspended, and the person shall not be eligible for parole....

separate acts of housebreaking. He had served "at least one term of confinement in a correctional institution as a result of a conviction of a crime of violence. . . ." All the convictions were for "crimes of violence" as defined in Article 27, § 643B(a). None of them, so far as the record reveals, involved actual violence or the use of a weapon, nor, so far as I can tell, was Minor in possession of a weapon when any of the crimes were committed.

## II.

The Court's conclusion that no proportionality review of Minor's sentence is required is largely based on the notion that this case is governed by the Supreme Court's decisions in *Rummel v. Estelle,* 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980), and *Hutto v. Davis,* 454 U.S. 370, 102 S.Ct. 703, 70 L.Ed.2d 556, (per curiam), *reh. denied,* 455 U.S. 1038, 102 S.Ct. 1742, 72 L.Ed.2d 156 (1982), and not by its subsequent decision in *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). Because I read *Helm* as effectively overriding *Rummel* and *Hutto,* I cannot accept this conclusion.

*Rummel* involved a Texas statute that called for life imprisonment for anyone "three times convicted of a felony less than capital. . . ." 445 U.S. at 264, 100 S.Ct. at 1134, 63 L.Ed.2d at 385. Rummel was convicted of (1) use of a credit card to obtain $80 worth of goods, (2) forgery of a check for $28.36, and (3) use of false pretenses to obtain $120.75. He was sentenced to life imprisonment. The Supreme Court found that sentence unexceptionable under the cruel and unusual punishment clause of the eighth amendment. *Id.* at 265–267, 100 S.Ct. at 1134–1135, 63 L.Ed.2d at 385–386.

In an opinion joined by Chief Justice Burger and Justices Stewart, White, and Blackmun, Justice Rehnquist rejected the argument that the references to disproportionality analysis found in certain death cases required that sort of analysis in noncapital cases. He noted the "unique nature of the death penalty for purposes of Eighth Amendment

analysis. . . ." *Id.* at 272, 100 S.Ct. at 1138, 63 L.Ed.2d at 389. Additionally, he emphasized the importance of deference to legislatively established policy as to the form of punishment to be inflicted upon repeat offenders. The "primary goals" of recidivist statutes, Justice Rehnquist reasoned,

> are to deter repeat offenders and, at some point in the life of one who repeatedly commits criminal offenses serious enough to be punished as felonies, to segregate that person from the rest of society for an extended period of time. This segregation and its duration are based not merely on that person's most recent offense but also on the propensities he has demonstrated over a period of time during which he has been convicted of and sentenced for other crimes. Like the line dividing felony theft from petty larceny, the point at which a recidivist will be deemed to have demonstrated the necessary propensities and the amount of time that the recidivist will be isolated from society are matters largely within the discretion of the punishing jurisdiction.

*Id.* at 284–285, 100 S.Ct. at 1144–1145, 63 L.Ed.2d at 397. In a concurring opinion, Justice Stewart expressed the view that although the Texas recidivist statute was undesirable as a matter of policy, it was not unconstitutional. *Id.* at 285, 100 S.Ct. at 1145, 63 L.Ed.2d at 398.

Thus, the *Rummel* majority disclaimed any analogy to proportionality review in capital cases and concluded that the length of sentence imposed pursuant to a habitual offender statute was virtually immune from eighth amendment scrutiny: a legislature could classify crimes (*e.g.*, as felonies or misdemeanors) and set sentence ranges or minimums as it deemed appropriate in order to achieve the isolation of recidivists from society. The majority did not engage in a proportionality analysis; it held that Rummel's sentence did not constitute cruel and unusual punishment.

Justice Powell, joined by Justices Brennan, Marshall, and Stevens, dissented. *Id.* at 285, 100 S.Ct. at 1145, 63 L.Ed.2d at 398. In the view of the minority:

The scope of the Cruel and Unusual Punishments Clause extends not only to barbarous methods of punishment, but also to punishments that are grossly disproportionate. Disproportionality analysis measures the relationship between the nature and number of offenses committed and the severity of the punishment inflicted on the offender. The inquiry focuses on whether, a person deserves such punishment, not simply on whether punishment would serve a utilitarian goal. A statute that levied a mandatory life sentence for overtime parking might well deter vehicular lawlessness, but it would offend our felt sense of justice.

*Id.* at 288, 100 S.Ct. at 1146, 63 L.Ed.2d at 400. Moreover, Justice Powell argued, the notion that proportionality analysis "may be less applicable when a noncapital sentence is challenged" is one that "finds no support in the history of Eighth Amendment jurisprudence." *Id.* at 288, 100 S.Ct. at 1147, 63 L.Ed.2d at 400. "The principle of disproportionality has been acknowledged to apply to both capital and noncapital sentences." *Id.* at 293, 100 S.Ct. at 1149, 63 L.Ed.2d at 403.

The minority opinion went on to propose three objective factors to be applied in proportionality analysis, to apply those factors to the facts of Rummel's case, and to conclude that Rummel's sentence was unconstitutionally disproportionate. *Id.* at 295–307, 100 S.Ct. at 1150–1156, 63 L.Ed.2d at 404–412.

With the battle lines thus clearly drawn, the Supreme Court was confronted with *Hutto v. Davis, supra,* in which the *Rummel* majority again prevailed. Under a Virginia statute, Hutto was sentenced to prison for 40 years upon his conviction of possession of nine ounces of marijuana with intent to distribute. A United States District Court applied proportionality analysis and set the sentence aside. Eventually, an evenly divided Fourth Circuit affirmed. 454 U.S. at 372, 102 S.Ct. at 704, 70 L.Ed.2d at 559. In a per curiam opinion, the Supreme Court reversed. It relied on *Rummel,* which it said stood for the propositions that

federal courts should be reluctant to review state legislatively mandated terms of imprisonment and that successful challenges to the proportionality of particular sentences should be exceedingly rare. It insisted that *Rummel* must be followed. *Id.* at 374–375, 102 S.Ct. at 705–706, 70 L.Ed.2d at 560–561.

Justice Powell thought the sentence grossly disproportionate, but concurred in the judgment because he believed *Rummel* to be controlling. *Id.* at 375, 102 S.Ct. at 706, 70 L.Ed.2d at 561. The other *Rummel* dissenters (through Justice Brennan) expressed their continuing disagreement with *Rummel. Id.* at 381, 102 S.Ct. at 709, 70 L.Ed.2d at 565. They also thought that *Hutto,* by applying the *Rummel* doctrine to one who had not been sentenced as an habitual offender, had worked "a serious and improper expansion of *Rummel." Id.* at 382–383, 102 S.Ct. at 710, 70 L.Ed.2d at 566.

Then came the revolution, ushered in by the somewhat unlikely person of Jerry Helm. From 1964 through 1975, Helm was convicted, in South Dakota, of third degree burglary (thrice), false pretenses, grand larceny, and drunk driving. In 1979 his conviction of uttering a $100 "no account" check yielded a life sentence without parole under South Dakota's habitual offender statute. That, the Supreme Court held in *Solem v. Helm, supra,* violated the eighth amendment.

Justice Powell, who had written the *Rummel* dissent, now wrote for the majority. He was joined by the other *Rummel* dissenters, plus Justice Blackmun. The *Helm* majority opinion essentially adopts the *Rummel* dissent. First, it adopts the view that the discussion of proportionality analysis in capital cases can be—indeed should be—applied in other cases:

> There is no basis for the State's assertion that the general principle of proportionality does not apply to felony prison sentences. The constitutional language itself suggests no exception for imprisonment.

463 U.S. at 288–289, 103 S.Ct. at 3009, 77 L.Ed.2d at 648 [footnote omitted]. The fact that successful challenges to proportionality may seldom occur outside the context of capital cases does not mean that the principle is inapplicable in noncapital cases. *Id.* at 289–290, 103 S.Ct. at 3009, 77 L.Ed.2d at 649.

Next, the *Helm* Court makes clear that deference to the legislature does not end the inquiry:

> In sum, we hold as a matter of principle that a criminal sentence must be proportionate to the crime for which the defendant has been convicted. Reviewing courts, of course, should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes, as well as the discretion that trial courts possess in sentencing convicted criminals. But no penalty is *per se* constitutional. As the Court noted in *Robinson v. California*, 370 U.S. [660] at 667 [82 S.Ct. 1417, 1420, 8 L.Ed.2d 758 (1962)], a single day in prison may be unconstitutional in some circumstances.

463 U.S. at 290, 103 S.Ct. at 3009–3010, 77 L.Ed.2d at 649.

Finally, Justice Powell and the new majority go on to adopt the same three-factor analysis that was proposed by the dissent but rejected by the majority in *Rummel.*[2] They apply it to the facts of Helms's case and hold his punishment unconstitutional. *Id.* at 290–300, 103 S.Ct. at 3010–3015, 77 L.Ed.2d at 649–655.

*Helm,* then, is the converse of *Rummel* and *Hutto.* Although *Helm* expressly overrules neither of the earlier two cases, it simply rejects the reasoning on which both of them rest and comes to a holding that is inconsistent with that of *Rummel.* Given those facts and the composition of the majority and the minority in *Rummel* and in *Helm,* it seems clear enough that the former is no longer viable in view of the latter. Nor does the doctrine established by

---

**2.** In its alternative holding, the majority in this case applies these same factors. They are set forth at 597.

*Helm* depend upon the difference between a life sentence without parole (*Helm*) and a life sentence with the possibility of parole (*Rummel*). If further demonstration is required, one has only to turn to Chief Justice Burger's angry dissent (joined by Justices White, Rehnquist and O'Connor) in *Helm:* "The controlling law governing this case is crystal clear, but today the Court blithely discards any concept of *stare decisis* [by rejecting *Rummel* ]." *Id.* at 304, 103 S.Ct. at 3017, 77 L.Ed.2d at 658. Moreover, the Court's analysis in *Helm* is "completely at odds with the reasoning of our recent holding in *Rummel....*" *Id.* at 305, 103 S.Ct. at 3017, 77 L.Ed.2d at 659. And "Rummel, in this Court, advanced precisely the same arguments that respondent [Helm] advances here; we rejected those arguments [but now the majority accepts them]...." *Id.* at 306, 103 S.Ct. at 3018, 77 L.Ed.2d at 659 (Burger, C.J., dissenting). There is much more to the same effect; what I have quoted is sufficient to make the point.

Many scholarly commentators have taken the viewpoint that *Helm* effectively overruled *Rummel. See, e.g.,* Baker & Baldwin, "Eighth Amendment Challenges to the Length of a Criminal Sentence: Following the Supreme Court From 'Precedent to Precedent,' " 27 Ariz.L.Rev. 25, 46–49 (1985); Bradley, "Proportionality in Capital and Non–Capital Sentencing: An Eighth Amendment Enigma," 23 Idaho L.Rev. 195, 211 (1986) (*"Solem* is important ... because the Court effectively wrote *Rummel* out of the body of eighth amendment case law ..."); Cover, "The Supreme Court 1982 Term, Foreword: *Nomos* and Narrative," 97 Harv.L.Rev. 4, 128 (1983) (In *Solem v. Helm,* "the Court refrained from explicitly overruling *Rummel,* but repudiated much of the reasoning on which that decision relied"); Note, *"Solem v. Helm:* The Courts' Continued Struggle to Define Cruel and Unusual Punishment," 21 Cal.W.L.Rev. 590, 608 (1985) (*"Solem* does not technically overrule *Rummel.* However, in theory it must overrule *Rummel* and its practical consequences are inimical"); Note, *"Solem v. Helm:* Extending Judicial Review Under the Cruel and Unusual Punishments

Clause to Require 'Proportionality' of Prison Sentences," 33 Cath.U.L.Rev. 479, 509–514 (1984) ("An Undeclared Overruling of Rummel v. Estelle ..."); Note, "Constitutional Law —Prison Sentences Grossly Disproportionate to the Crime Committed as Cruel and Unusual Punishment," 30 Wayne L.Rev. 1353, 1363 (1984) ("The dissenters [in *Helm* ] are correct in noting that the Supreme Court has for all practical purposes overruled its decision in *Rummel* "); Comment, "The Requirement of Proportionality in Criminal Sentencing: *Solem v. Helm,*" 11 New Eng.J.Crim. & Civ. Confinement 238, 251–252 (1985) ("The majority in *Solem* does not overrule *Rummel....* The court, however, reverses the reasoning used in *Rummel* and in *Hutto* "); Comment, *"Solem v. Helm:* Extension of Eighth Amendment Proportionality Review to Noncapital Punishment," 69 Iowa L.Rev. 775, 792 (1984) ("[B]y limiting *Rummel* to its facts and reinterpreting *Rummel*'s holding, as suggested by the majority in *Helm* ..., *Helm* may have restricted *Rummel* to such an extent as to have overruled it, even while purporting not to do so").

At least two courts have similarly characterized the *Helm/Rummel* dichotomy. *See People v. Hernandez,* 686 P.2d 1325, 1329 (Colo.1984) (en banc) ("Since *Solem* ... [was] the last pronouncement of the Supreme Court," the court was "compelled to grant proportionality review when a life sentence [with the possibility of parole was] ... imposed under the Colorado habitual criminal statute"); *Williams v. State,* 539 A.2d 164, 172 (Del.1988) (The court was "not persuaded by" the State's argument that *Rummel* controlled; "[a]lthough *Solem* did not go so far as to overrule *Rummel,* it did repudiate much of the reasoning upon which *Rummel* relied").

Since *Helm* is now the governing decision, the eighth amendment requires us to apply proportionality analysis at the very least in any case in which a substantial mandatory sentence is imposed, without the possibility of parole, under

an habitual offender statute. I dissent from the Court's holding that it is not constitutionally required to do so.[3]

## III.

I also disagree with the Court's alternative holding that Minor's sentence is not constitutionally disproportionate. The analytical flaw underlying this holding also infected *State v. Davis, supra.* It is and was the Court's failure to look at the actual facts involved in the several offenses. This approach would have been appropriate under *Rummel.* It is not permitted under *Helm.* Nor is the majority's refusal to look at those facts mitigated by its disclaimer that "we do not suggest that under constitutional review the facts of the predicate crime are immaterial or must be ignored." Having written that, the majority proceeds to ignore the facts of the predicate crimes in this case.

In his *Rummel* dissent, Justice Powell observed that "[n]one of the crimes [committed by Rummel] involved injury to one's person, threat of injury to one's person, violence, the threat of violence, or use of a weapon." 445 U.S. at 295, 100 S.Ct. at 1150, 63 L.Ed.2d at 404. And in his application of proportionality review, he again emphasized the actual nature of or events surrounding these offenses. *Id.* at 295–296, 100 S.Ct. at 1150–1151, 63 L.Ed.2d at 404–405. As I have already noted, Justice Powell's dissent in *Rummel* became the majority view in *Helm.* In the latter case, Justice Powell took pains to point out that all of Helm's offenses were "all nonviolent, [and] none was a

---

**3.** The Court's analysis in *State v. Davis,* 310 Md. 611, 530 A.2d 1223 (1987), was also error, in my view. I believe the position taken by the Court of Special Appeals in *Davis v. State,* 68 Md.App. 581, 514 A.2d 1229 (1986), *aff'd in part, rev'd in part,* 310 Md. 611, 530 A.2d 1223 (1987), to be correct. I am also now constrained to conclude that the failure of the Court of Special Appeals to apply proportionality analysis in cases involving 25 years without parole, such as *Bryan v. State,* 63 Md.App. 210, 492 A.2d 644, *cert. denied,* 304 Md. 296, 498 A.2d 1183 (1985), was wrong. Given the nature of the predicate offenses there, however, (robbery with a deadly weapon and robbery) Bryan's sentence may well have been constitutionally proportionate.

crime against a person...." 463 U.S. at 280, 103 S.Ct. at 3005, 77 L.Ed.2d at 643. He looked in detail at the offenses and their actual nonviolent nature again during the application of proportionality analysis. *Id.* at 296–297, 103 S.Ct. at 3012–3013, 77 L.Ed.2d at 653.

The message that comes through to me is clear: the fact that the legislature has classified offenses as felonies or as crimes of violence, for purposes of a recidivist statute, is not decisive. Nor is the fact that a crime so classified might involve the potentiality of violence; that was true of at least some of Helm's predicate crimes. *See* 463 U.S. at 315–316, 103 S.Ct. at 3023, 77 L.Ed.2d at 665–666 (Burger, C.J., dissenting). When a court applies eighth amendment proportionality review, it "must ... be undeterred by the label 'crime of violence' and consider the facts of the crimes [the offender] ... actually committed." *Davis v. State,* 68 Md.App. at 591, 514 A.2d at 1234.

When that approach is taken here, I observe no actual violence in any of Minor's offenses, no threat of violence, no use of a weapon. Despite the legislative classification, these were not "crimes of violence." In terms of the first criterion established by *Helm,* the offenses committed by this inept housebreaker were not serious.

As to the second *Helm* criterion, Maryland punishes in a much less severe fashion offenders guilty of crimes involving the actual use of force or the threat of force. *See* Art. 27, § 1 (prison sentence of no more than eight years for the forcible abduction of a child under 16 years); Art. 27, § 7 (maximum sentence of 20 years for anyone "who wilfully and maliciously sets fire to or burns ... any barn, stable, garage or other building ..."); Art. 27, § 12 ("person convicted of the crime of an assault with intent to rob ... [may be punished by] imprisonment for not less than two years or more than ten years"); Art. 27, § 12 (conviction for "assault with intent to commit rape" punishable by "not less than two years nor more than 15 years"); Art. 27, § 386 (the unlawful stabbing or shooting of another individual or an assault with intent to maim carries a prison

sentence of not more than 10 years); Art. 27, § 387 (voluntary manslaughter is punishable by a period of imprisonment that does not exceed 10 years); Art. 27, § 486 (10-year maximum sentence for robbery); Art. 27, § 488 (robbery with a dangerous or deadly weapon punishable by a maximum of 20 years imprisonment). The same maximums apply even to those convicted of these offenses for a second time. All persons convicted and sentenced under these statutory provisions, moreover, are eligible for parole. Even a murderer sentenced to life imprisonment with the possibility of parole may serve as few as 15 years before being paroled. Md.Code (1957, 1986 Repl.Vol., 1987 Cum. Supp.), Art. 41, § 4-607(b)(1); Md.Regs.Code tit. 12, § 12.08.01.17(3)(a) (1980).

Turning to the third criterion, in other states, while those who commit nonviolent property crimes may often be given long sentences under recidivist statutes, these sentences are, for the most part, subject to the discretion of the courts. *See* Appendix to Minor's Brief. Only three other states impose, for nonviolent recidivist offenders, mandatory minimum sentences that are more stringent than the one Maryland imposed in this case. *See* Colo.Rev.Stat. § 16–13–101 (1986 Repl.Vol.) (25–year mandatory minimum sentence upon third conviction for second degree burglary of a dwelling house); Del.Code Ann. tit. 11 § 4214(b) (1987 Repl.Vol.) (mandatory life sentence without the possibility of parole for third conviction of second degree burglary); Ind.Code Ann. § 35–50–2–8 (1985 Repl.Vol., 1988 Cum. Supp.) (36–year mandatory minimum sentence upon third conviction for burglary of a dwelling house).

Indiana, however, provides for parole which could substantially reduce a sentence actually served under its recidivist statute. *See* Ind.Code Ann. § 11–13–3–2(b)(2) (1981 Repl.Vol.) (eligibility for consideration for parole begins after half of sentence is served). Its statute cannot be considered more stringent than § 643B's 25–year mandatory minimum sentence without the possibility of parole. Colorado and Delaware are thus the only states that treat

their nonviolent recidivist offenders more harshly than Maryland. *See* Appendix to Minor's Brief.

As I see it, the three-part *Helm* analysis weighs heavily in Minor's favor. I am convinced that a sentence of 25 years without parole for a nonviolent recidivist housebreaker, who has carried no weapon during his illicit forays and who has actually taken nothing, is unconstitutionally disproportionate. Consequently, I find that sentence as applied to Minor to be cruel and unusual in violation of the eighth amendment, and I would reverse.[4]

---

**4.** Obviously, Minor should not escape without punishment and, under my view, he would not. He is not a model citizen; he is a recidivist. The 25-year sentence should be vacated and the case remanded to the circuit court for imposition of a sentence proportionate to the actual nature of his offenses.